**Ernest S. AVERY, et al., Plaintiffs, Appellants,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.**

No. 86–1080.

United States Court of Appeals, First Circuit.

Argued June 3, 1986.

Decided July 16, 1986.

Judith C. Saltzman, Boston, Mass., with whom Sarah Anderson, Greater Boston Legal Services, and Linda Landry, Neighborhood Legal Services, Lynn, Mass., were on brief, for plaintiffs, appellants.

Susan G. Winkler, Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., Boston,

Mass., was on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, COFFIN and TORRUELLA, Circuit Judges.

COFFIN, Circuit Judge.

This appeal has been brought by six named plaintiffs, suffering from a variety of ailments, who allege that defendant Secretary of Health and Human Services failed to consider properly their subjective claims of pain when he evaluated their ability to engage in substantial gainful employment. Consequently, they allege, their disability benefits under both Title II (Social Security Disability Insurance—SSDI) and Title XVI (Supplemental Security Income—SSI) of the Social Security Act, 42 U.S.C. §§ 401–433, and §§ 1381–1385, were wrongfully terminated.

Plaintiffs' first amended complaint was filed in July, 1983. They sought certification of a class on several issues, including the propriety of the Secretary's evaluation of pain. On April 12, 1984, the district court, after certifying a class on one of the issues, denied certification with respect to the pain issue, concluding that plaintiffs had not shown that Fed.R.Civ.P. 23(a)'s requirements of numerosity, commonality, typicality and adequacy of representation had been satisfied. At the time of this ruling four of the named plaintiffs had been returned to payment status and were receiving disability benefits. Subsequently, in September, 1984, the district court reversed the Secretary's termination of the two remaining plaintiffs' benefits and restored them to payment status. In August, 1984, a seventh person, Frances Teague, who, unlike plaintiffs, had been denied initial benefits, sought to intervene.

In October, before the court ruled on the intervention request, Congress enacted the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, 98 Stat. 1794 (1984) (the Act). On November 7, 1984, the Secretary moved to dismiss the complaint, on the grounds that there were no remaining named plaintiffs with a pending claim on the pain issue and that the new Act established a clear and presently applicable standard of evaluating pain. On December 4, 1984, plaintiffs filed their second amended complaint, alleging principally that the Secretary's Social Security Ruling 82-58 (SSR 82-58) violated the new Act.[1] SSR 82-58, which we shall later examine in some detail, was characterized as requiring "in all cases so-called 'objective' documentation not merely of the *cause* of subjectively felt pain, but also of its *intensity.*" (Emphasis in original.) The new complaint also alleged that the plaintiffs represented a class consisting of every Massachusetts disability benefits applicant with a physical or mental abnormality which causes pain whose claim was or will be denied or terminated "because the Secretary ... relied, at least in part, upon an absence or lack of clinical findings in determining that the pain is not disabling." The prayers for relief were that SSR 82-58 be declared illegal and that a declaratory judgment proscribe the Secretary from conditioning disability benefits for "persons with medically documented abnormalities that cause pain ... [on] 'objective' or clinical documentation of the intensity of the pain."

The Act, after stating that a claimant's statement as to his pain "shall not alone be conclusive evidence of disability", requires first that

"there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment ... which could rea-

---

**1.** The resolution of allegations that 82–58 also violated case law from this circuit and the Secretary's own regulations would seem to be completely swallowed up by a resolution of the statutory violation issue.

sonably be expected to produce the pain ... alleged...." 42 U.S.C. § 423(d)(5).

It then provides that disability is established if such findings

"when considered with all evidence ... (including statements of the individual or his physician as to the intensity and persistence of such pain ... which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability." *Id.*

The Act also calls for the appointment by the Secretary of a Commission on the Evaluation of Pain to conduct, in consultation with the National Academy of Sciences, a study concerning the evaluation of pain under Titles II and XVI.

On December 10, 1984, the district court issued a memorandum of decision dealing with a number of issues. The specific decision with which we are here concerned was the court's ruling that plaintiffs' pain claims had been rendered moot.[2] The court made essentially three points: that the Act had established a standard for evaluating pain; that it adopted all of the Secretary's regulations and policies, including, impliedly, 82–58; and that in any event it would be premature to evaluate the policies before the Secretary had had an opportunity to measure them against the statutory standard.

We confess that we would be troubled if the consistency of 82–58 with the Act were to be dispositive of this appeal. The Secretary draws comfort from a statement in the legislative history that Congress intended to adopt "the present regulatory policy on the use of evidence of pain in the evalua-

tion of disability." 130 Cong.Record, H9829 (daily ed. Sept. 19, 1984). Plaintiffs, however, construe "regulatory" as a reference to only regulations, not to rulings. Our own view is that however expansive may have been the intent of Congress in embracing the Secretary's then existing policies, we see possible tension between the Act and 82–58.

The Act makes clear that, as a primary requirement, there must be a clinically determinable medical impairment that can reasonably be expected to produce the pain alleged. It then goes on to provide that other evidence including statements of the claimant or his doctor, consistent with the medical findings, shall be part of the calculus. If this second provision is to have any meaning, the statements of a claimant and his doctor must be additive to clinical or laboratory findings.[3] This does not mean that *any* statements of subjective pain go into the weighing. For example, the Act would not permit the acceptance, as possibly decisive evidence of disability, of complaints of violent headaches from a claimant whose medically determinable impairment indicating the probability of pain was confined to the lower extremities. Nevertheless, so long as statements of a claimant or his doctor are not inconsistent with the objective findings, they could, if found credible by the adjudicator, permit a finding of disability where the medical findings alone would not.

SSR 82–58 gives us pause. It seems to speak out of both sides of its mouth, the "objective only" side more than the side allowing consideration of certain "subjective" statements of pain. To begin, its "Policy Statement", reproduced in the mar-

---

**2.** This ruling appears to be the linchpin for the court's simultaneous denials of Teague's motion to intervene and of plaintiffs' motion to amend their first amended complaint to add a class action.

**3.** Other courts have similarly read the Act. *Howard v. Heckler,* 782 F.2d 1484, 1488 (9th Cir.1986); *Foster v. Heckler,* 780 F.2d 1125,

1128–29 (4th Cir.1986); *Hand v. Heckler,* 761 F.2d 1545, 1548 (11th Cir.1985); *Green v. Schweiker,* 749 F.2d 1066, 1068–70 (3d Cir. 1984). *See also Herbert v. Heckler,* 783 F.2d 128, 130–31 (8th Cir.1986) (interpreting requirements of Act, regulations, and SSR 82–58 in light of settlement agreement set forth in *Polaski v. Heckler,* 739 F.2d 1320, 1321–22 (8th Cir. 1984))

gin,[4] starts off with the basic requirement of an objectively established medical condition that could reasonably be expected to produce the pain claimed. Then it goes on to say that "symptoms are still not controlling" and that clinical and laboratory data must "reasonably account for the symptom." The clear inference is that these data are in addition to the findings of an impairment that could be a likely source of pain. If there were doubt on this score, the last three sentences quoted make it clear—or at least arguable—that any claim of intensity must be corroborated by, not merely be consistent with, clinical findings.

The discussion in SSR 82–58 on determining Residual Functional Capacity (RFC) points the other way. It proceeds to recognize that "[s]ymptoms can sometimes suggest a greater severity of impairment than is demonstrated by objective medical findings alone." Consideration should, it continues, be given "alleged frequency and duration of [pain]" as well as precipitating factors, effect on daily activities, dosage and effects of medication, and recorded observations of others. And denial decisions must state why subjective testimony of limitation of function because of pain is not supported by the evidence.

Finally, uncertainty is compounded by the two examples described, No. 1 "Effects of Pain Supported by the Evidence" and No. 2 "Effects of Pain Unsupported by the Evidence." We have attempted our own comparative summary in the Appendix. The only clear objective difference we see

between the two examples is the presence of muscle spasm of paraspinal muscles in Example 1 and its absence in Example 2. This is apparently the one factor—neither Example showing any sensory or motor loss, leg pain, or muscle wasting—that 82–58 deems sufficient to overcome the stronger factors in Example 2—the evidence of guarded movements, the treating physician's strong opinion that claimant could do no work, and the claimant's professed inability to do any household chores. We confess as laymen that our reading of these examples indicates an extreme insistence on objective medical findings to corroborate subjective testimony of limitation of function because of pain. We suspect that SSR 82–58 may encourage adjudicators to require a closer nexus between complaints of pain and observable medical findings than the Act now contemplates.

We are fortunately spared the task of making a definitive ruling on the compatibility between SSR 82–58 and the Act. On August 1, 1985, the Secretary issued instructions for its Program Operations Manual System (POMS), DI T00401.570. This is a seven page circular, its purpose being "to ensure that all adjudicators understand and consistently apply the existing policy (now codified in statute) for the evaluation of pain...." Notwithstanding this disclaimer of policy change, it is obvious to us that the POMS instructions go considerably beyond 82–58 in recognizing subjective testimony of pain.

The instructions specifically contemplate a possible finding of disability in a case

---

4. "Policy Statement: Symptoms will not have a significant effect on a disability determination or decision unless medical signs or findings show that a medical condition is present that could reasonably be expected to produce the symptoms which are alleged or reported. However, once such a medical condition (e.g., disc disease) is objectively established, the symptoms are still not controlling for purposes of evaluating disability. Clinical and laboratory data and a well documented medical history must establish findings which may reasonably account for the symptom in a par-

ticular impairment. Objective clinical findings which can be used to draw reasonable conclusions about the validity of the intensity and persistence of the symptom and about its effect on the individual's work capacity must be present. For example, in cases of back pain associated with disc disease, typical associated findings are muscle spasm, sensory loss, motor loss, and atrophy. There must be an objective basis to support the overall evaluation of impairment severity. It is not sufficient to merely establish a diagnosis or a source for the symptom."

"where the degree of pain alleged is significantly greater than that which can be reasonably anticipated based on the objective physical findings...." In such cases a further exploration of other information is "consistent with recent court decisions, as well as with the statutory language [requiring consideration of statements of claimant or his physician consistent with medical findings]." Specifically, when there is a claim of pain not supported by objective findings, the adjudicator is to "obtain detailed descriptions of daily activities by directing specific inquiries about the pain and its effects to the claimant, his/her physicians from whom medical evidence is being requested, and other third parties who would be likely to have such knowledge." Further, "it is essential to investigate all avenues presented that relate to subjective complaints...."

Finally, the examples set forth in POMS DI T00401.570F are not only much more general (leaving arguably more latitude to the adjudicator), but conclude with Example 2, a case where (1) the objective medical evidence does not substantiate the alleged degree of limitation due to pain, and (2) a *further* review of the medical evidence fails to show any objective findings typically associated with the limiting pain alleged.

In such a case the adjudicator cannot stop, but

"must be aware that symptoms, such as pain, can result in greater severity of impairment than may be clearly demonstrated by the objective physical manifestations of a disorder. Thus, before a complete evaluation of this individual's RFC can be made, a full description of the individual's prior work record, daily activities and any additional statements from the claimant, his or her treating physician or other third party relative to the alleged pain must be considered. Only then is it possible to fully assess whether the pain is reasonably consistent with the objective medical findings and to determine RFC."

We have no doubt that these instructions correct whatever shortcomings existed in SSR 82–58 and conform faithfully to the Act. But plaintiffs oppose our consideration of POMS. They argue, first, that POMS is not binding on administrative law judges or the Appeals Council, citing legislative history of the Act. H.R.Rep. No. 98–1039, 98th Cong., 2nd Sess. 35, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3038, 3080, 3093. Whatever may be the ordinary effect of POMS, these instructions have been presented to us unequivocally as the Secretary's policy and interpretation.[5]

---

5. His brief on appeal contains the following passages: "In the interim period [before the advent of new policies pursuant to the Pain Commission's report and actions of Congress], the Act and the Secretary's regulations, as explained in SSR 82–58 *and as further articulated in the new POMS instruction is the national policy on pain.*" (p. 20) (emphasis supplied). "In the new POMS instructions, the Secretary also clarifies Example 2 of SSR 82–58. In particular, the Secretary notes that the adjudicator must be aware that 'symptoms, such as pain, can result in greater severity of impairment than may be clearly demonstrated by the objective physical manifestations of a disorder.'" (p. 21.)

Moreover, his counsel made the following oral argument to us:

"In August of 1985 after the district court ruled on the motion for reconsideration, the POMS instructions and circular were publish-ed.... and the Secretary shifted somewhat the degree of weight given.... to the subjective complaint of pain....

....

"I would argue that the plaintiff's claims are moot because the Secretary does what they've asked ... them [sic] to do, and in particular I would direct your attention to the plaintiffs' second amended complaint where the relief they asked for in this case is a declaratory judgment that the defendants [sic] will not require objective documentation of the intensity of pain as a necessary precondition of benefits. If you look at the POMS instructions and SSR 82–58 in their entirety, they do not require such objective documentation regarding the intensity as a necessary precondition. The subjective complaints of pain can be believed. But the adjudicator is directed to take into account all the evidence...."

We cannot believe that such a deliberate effort to "clarify" SSR 82–58 and its Example 2 would be intended to guide only the deciders of first instance. We therefore construe POMS DI T00401.570 as being the latest word on departmental pain policy, committing the Secretary and superceding any inconsistent discussion and examples.[6]

Plaintiffs, in their reply brief, have included an affidavit from Kasper Goshgarian, the Deputy Commissioner of the Massachusetts Rehabilitation Commission, the official responsible for making disability determinations for SSI and SSDI applicants. As of May 1, 1986, he avers, the application of SSR 82–58 "will continue to result in denial of benefits to persons with underlying complaints of pain if they are unable to provide 'objective' medical documentation or clinical tests showing the extent of the pain and the extent of the functional limitation caused by the pain." He also states that the POMS instructions were not distributed to his agency until March or April, 1986, and, in any event, "have not removed this bottom line requirement of objective medical documentation of pain."

As stated above, we reach a different conclusion as to the impact of the POMS instructions in this case, and we cannot permit the statement of an official that is at odds with the stated policy of the Secretary to constitute a sufficient indication of vital signs in a controversy to preclude a ruling based on mootness. At the same time, however, having found mootness based on the Secretary's assertion that the evaluation of pain will be made consistently with the POMS, we would not countenance any decision by the Secretary contrary to the liberalized modification of SSR 82–58 as contained in the POMS instructions.

Plaintiffs also urge that we consider the POMS instructions as new evidence not properly a part of the record on appeal.

But the instructions are not evidence relevant to the case at issue in the district court, but rather the event which removes that issue as a case or controversy. They are like a "statute passed during the course of litigation [which] may make unnecessary a determination of the former controversy." 6A J. Moore, *Moore's Federal Practice,* ¶ 57.13, at 57–127 (2d ed. 1985) (footnote omitted). More precisely, the instructions constitute "an interpretation, not previously made, of the challenged [ruling]", which moots the controversy. *Free v. Landrieu,* 666 F.2d 698, 703–04 (1st Cir.1981). *See also Thorpe v. Housing Authority,* 386 U.S. 670, 87 S.Ct. 1244, 18 L.Ed.2d 394 (1967) (petitioner tenant protested cancellation of tenancy without notice; Court vacated and remanded case because of subsequent HUD directive to local housing authorities requiring notice, reasons, and opportunity to reply); *Rural America, Inc. v. Donovan,* 597 F.Supp. 319, 321–22 (D.D.C.1984) (Department of Labor's assertion in brief and at hearing that organizations like plaintiff are entitled to due process hearing moots suit based on lack thereof); *Vann v. Housing Authority of Kansas City, Mo.,* 87 F.R.D. 642, 657–658 (W.D.Mo.1980) (city housing authority, with approval of HUD, adopted new tenant assignment policy, mooting the controversy). We add that there has been no indication that the issue raised by plaintiffs meets the twofold test of being "capable of repetition, yet evading review." *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975).

We therefore hold that plaintiffs' challenge to SSR 82–58 is now moot, if it has not been so earlier. We therefore remand with orders to vacate the judgment and dismiss the complaint.

No costs.

6. Although ordinarily we would find no need to publish an administrative publication as an addendum to our decision, we do so in this case because it has been brought to our attention that POMS directives are not always available to the public and because the Secretary relies so substantially in this case on the content of POMS DI T00401.570.

APPENDIX

Comparison of Examples 1 and 2
in Social Security Ruling 82–58

\* Factors apparently supporting claimant in Example 1 more than claimant in Example 2.
\*\* Factors apparently supporting claimant in Example 2 more than claimant in Example 1.

| 1. Effects of Pain Supported by the Evidence | 2. Effects of Pain Unsupported by the Evidence |
|---|---|
| Disc excision at L4–5 and back pain | Disc excisions at L3–4, L4, L5–S1 Spinal fusion of L3–S1 |
| Limitation of forward bending to 45°; extension to 5° | Limitation of forward bending to 50°; extension to 10° |
| No limp or difficulty in heel and toe walking | \*\*All movements guarded; no actual difficulty in heel and toe walking |
| \*Difficulty in climbing onto examining table | No "actual" difficulty in climbing onto examining table |
| Back pain if lying flat | Back pain on straight-leg raising at 60° |
| Straight-leg raising positive at 30° on right, 70° on left | No radiation of pain into legs |
| Depressed right achilles reflex | \*\*Absent left achilles reflex |
| \*Marked tenderness over right lumbar spine, with marked spasm of paraspinal muscles | Moderate tenderness to deep palpation of lumbar paraspinous muscles, but no muscle spasm |
| Increased back pain on forward flexion with splinting of lower spine | Leg circumferences equal |
| No motor or sensory loss | Solid fusion, no movement |
| Wears brace | No motor or sensory loss |
| 8–10 aspirin daily, occasional codeine | Wears brace |
| | \*\* 15–20 aspirin daily, Darvon 4× daily |

Treating physician:

Pain is significant in restrictions

Patient to avoid heavy lifting

Claimant:

Continued pain; can't walk over two blocks; can't lift 2 year old grandson; can do only light household chores.

Conclusion:

Objective findings: limit lifting to 50 pounds, 25 pounds frequently; no frequent bending; clinical findings consistent with complaints. Therefore, can stand less than 6 hours a day. Unlimited sitting. Can't do most medium or light jobs, because such requires more standing and bending than claimant can do. Therefore, either sedentary jobs or light and medium if done sitting.

Treating physician:

\*\* Spinal fusion and back pain prevent all work indefinitely

Claimant:

Constant pain; worse on walking or standing; unable
\*\* to do any household chores.

Conclusion:

Because of spinal fusion, lifting limited to 50 pounds, 25 pounds frequently. No frequent bending. In spite of complaints and physician's opinion, "objective medical evidence establishes the absence of any findings (e.g., muscle spasm, sensory or motor loss, leg pain, or muscle wasting, etc.)" associated with limiting back pain. Unlimited capacity to stand, walk, sit. Therefore, sedentary, substantially all light jobs, and medium jobs if sitting and not frequent bending.

TRANSMITTAL NO. 19
SSA Pub. No. 68–0400401
August 1, 1985

Audience: DDS: ADJ; ODO: DEC, DE, DS, RECONE; PSC: DE; INTPSC: FDE, RECONE, FCR, ERE

Originating Office: SJH–82

PROGRAM OPERATIONS MANUAL SYSTEM
Part 04 — Disability Insurance
Chapter 004 — Case Development and Evaluation
Subchapter 01 — Developing and Evaluating Evidence of Disability

| New Material | No. of Pages |
| --- | --- |
| Table of Contents (T00401.570) ............................... | 1 |
| DI T00401.570.C.1 — T00401.570.F (Cont.) .... | 5 |

Action Notes

DI 00401.570 — Cross-refer to DI T00401.570
DI 00501.015C — Cross-refer to DI T00401.570D

Background

Proper consideration of the effect of pain (and other symptoms) on an individual's ability to work is an important part of the disability evaluation process. Because pain is subjective, the existence of pain and the extent to which pain affects an individual's ability to work is difficult to evaluate.

Under existing policy guidelines, as set forth in DI 00401.570ff. and in Social Security Ruling 82–58, an individual's statements, or those of his or her physician, regarding alleged pain must be considered by the adjudicator along with all available evidence, medical and other, in evaluating disability.

Section 3 of the Social Security Disability Benefits Reform Act of 1984 (Pub.L. 98–460) provides for inclusion in the statute of a statement on the evaluation of pain or other symptoms which mirrors this basic policy. At the same time, the legislation calls for the establishment of a Commission on the Evaluation of Pain to conduct a study, in consultation with the National Academy of Sciences, concerning the evaluation of pain in determining disability and to report their findings to the Secretary of Health and Human Services.

Explanation of Manual Changes

T00401.570  Evaluation of Pain and Other Symptoms

This temporary transmittal is being issued to ensure that all adjudicators understand and consistently apply the existing policy (now codified in statute) for the evaluation of pain and to reemphasize the considerations which must be given to claimant's allegations and reports of pain and other symptoms when evaluating disability.

**U.S. Department of**
**Health and Human Services**
**Social Security Administration**
**Office of Policy**
SSA Pub. No. 68–0400401
I.C.N. 991515

Effective Date: Upon Receipt
**Selective Distribution** C61
Special PSC Distribution
To adjust quantity requirements, submit form SSA–1296, "Request for Address or Distribution Change."

TABLE OF CONTENTS

T00401.570 Evaluation of Pain

| | Section |
| --- | --- |
| Evaluation of Pain and Other Symptoms .......................... | T00401.570 |

T00401.570 Evaluation of Pain and Other Symptoms

A. General

Proper consideration of the effect of pain (and other symptoms) on an individual's ability to work is an important part of the disability evaluation process. Because pain is subjective, the existence of pain and the extent to which pain affects the individual's functional ability to do basic work activities is difficult to evaluate.

The Social Security Disability Benefits Reform Act of 1984 (Pub.L. 98–460), enacted on October 9, 1984, included statutory language which, as explained by Congress, mirrors the basic policies for the evaluation of pain in disability cases. The legislation also called for the establishment of a Commission on the Evaluation of Pain to conduct a study, in consultation with the National Academy of Sciences, concerning the evaluation of pain in determining disability. The report of this Commission may lead to changes in our policy for evaluating pain.

B. Need to Establish a Medically Determinable Impairment

Under existing guidelines (see DI 00401.-570B), pain cannot be found to have a significant effect on a disability determination or decision unless medical signs or findings show that a medically determinable physical or mental impairment is present that could reasonably be expected to produce the pain alleged. This policy has now been codified by the legislative language in Pub.L. 98–460, section 3(a)(1), which states, in part, "there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged...."

When medical findings do not substantiate any physical impairment capable of producing the alleged pain (and a favorable determination cannot be made on the basis of the total record), the possibility of a mental impairment as the basis for the pain should be investigated.

C. Consideration of Pain in Establishing the Severity of a Medically Determinable Impairment

Once a medically determinable physical or mental impairment is documented, the effects of pain must be considered as you proceed through each step of the sequential evaluation.

1. Is the condition severe?

To be found disabled, an individual must have a medically determinable *severe* impairment(s). To be considered severe the impairment, or combination of impairments, must significantly limit the individual's physical or mental ability to do basic work activities. In determining whether an impairment(s) is severe, full consideration is given to all material evidence, including signs, symptoms (such as pain), and laboratory findings. Where the degree of pain reported is consistent with a level that can reasonably be associated with the objective findings presented, the conclusion that the impairment is severe must be based on a determination that the total evidence, including the alleged pain, establishes that the individual's ability to do basic work activities is significantly limited. However, where the degree of pain alleged is significantly greater than that which can be reasonably anticipated based on the objective physical findings, the allegation of pain must be carefully explored further in terms of any additional limitation(s) imposed by the pain on the individual's functional ability beyond those limitations indicated by the objective findings before any conclusions about severity can be reached. (See DI A00401.410 and DI 00401.570B.)

2. Are the findings about the individual's impairment identical to those in the listing?

Disability may be established on a medical basis alone if the criteria of an impairment cited in the Listing of Impairments are met or equalled. Some listed impairments include symptoms among the requisite criteria. For example, Listing 1.04 re-

quires a history of joint pain and stiffness. When a symptom, such as pain, appears as a criterion (as in Listing 1.04), it is ordinarily essential only that the symptom be present in combination with the remaining criteria. Unless specifically indicated (as in Listing 1.04A, which requires that abduction of both arms at the shoulders, including scapular motion, be restricted to less than 90 degrees), quantification or evaluation of the intensity or of the functionally limiting effects of that symptom is not required to determine whether the documented findings meet the requisite criteria. (See DI 00401.570C.)

3. Are the findings about the individual's impairment(s) equivalent to those for an impairment(s) in the listing?

In considering whether documented findings and symptoms are of equivalent severity to the requisite findings and symptoms of a listed impairment, we look to see if the set of symptoms, signs, and findings present are of equal or greater significance than those in the listed criteria. However, we cannot substitute an alleged or reported increase in the intensity of a symptom, no matter how severe, for a missing or deficient sign or finding to elevate impairment severity to equivalency to the listed impairment. For example, a history of severe, persistent joint pain cannot be substituted for the required x ray evidence of either joint space narrowing with osteophytosis or bony destruction (with erosions or cysts) in Listing 1.04 to draw a conclusion of "equal."

D. Considerations of the Intensity and Persistence of Pain in Determining Functional Capacity

If the listing is not met or equalled, a residual functional capacity (RFC) assessment is necessary to determine the effects of the impairment, including any additional limitations imposed by pain, on the claimant's capacity to perform former work or other work. Medical history and objective medical findings, such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, etc., are usually reliable indicators from which to draw reasonable conclusions about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity. Whenever available, this type of objective medical evidence must be obtained and, as expressed in Pub.L. 98–460, "must be considered in reaching a conclusion as to whether the individual is under a disability."

There are situations in which an individual's alleged on reported symptoms, such as pain, suggest the possibility of a greater restriction of the individual's ability to function than can be demonstrated by objective medical findings alone (see DI 00401.570D). In such cases, reasonable conclusions as to any limitations on the individual's ability to do basic work activities can be derived from the consideration of other information in conjunction with medical findings. This is consistent with recent court decisions, as well as with the statutory language which requires that statements of the claimant or his/her physician as to the intensity and persistence of pain or other symptoms "which may reasonably be accepted as consistent with the medical signs and findings" are to be included in the evidence to be considered in making a disability determination.

When the claimant indicates that pain is a significant factor of his/her alleged inability to work, and the allegation is not supported by objective findings in file, the adjudicator shall obtain detailed descriptions of daily activities by directing specific inquiries about the pain and its effects to the claimant, his/her physicians from whom medical evidence is being requested, and other third parties who would be likely to have such knowledge.

In developing evidence of pain or other symptoms, it is essential to investigate all avenues presented that relate to subjective complaints, including the claimant's prior work record and information and observations by treating and examining physicians and third parties, regarding such matters as:

1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

3. Type, dosage, effectiveness, and adverse side-effects of any pain medication;

4. Treatment, other than medication, for relief of pain;

5. Functional restrictions; and

6. The claimant's daily activities.

E. Importance of Considering Allegations of Pain and Explaining Conclusions Reached

In evaluating a claimant's subjective complaints of pain, the adjudicator must give full consideration to all of the available evidence, medical and other, that reflects on the impairment and any attendant limitations of function.

In the SSA–4734–F4 RFC assessment, the medical consultant is to describe the relationship between the medically determinable impairment and his/her conclusions of RFC which have been derived from the evidence, including a discussion of why reported daily activity restrictions are or are not reasonably consistent with the medical evidence. (See DI 00501.015C.)

In instances in which the adjudicator has observed the individual, the adjudicator is not free to accept or reject that individual's subjective complaints solely on the basis of such personal observations. Rather, in all cases in which pain is alleged, the determination rationale is to contain a thorough discussion and analysis of the objective medical and nonmedical evidence, including the individual's subjective complaints and the adjudicator's personal observations. (See DI 00501.125.) The rationale is then to provide a resolution of any inconsistencies in the evidence as a whole and set forth a logical determination of the individual's capacity to work.

F. Consideration of Pain in Determining RFC

POMS DI 00401.570D contains two examples of situations in which allegations of pain are evaluated.

Example 1 presents a picture of an individual with a severe medically determinable impairment who alleges pain with attendant limitations of function as reflected in his stated restrictions in daily activities. In this example, the clinical findings are consistent with both the complaints of pain and with the individual's stated limitations. Thus, the adjudicator, in reviewing all of the available evidence, including the statements of the claimant and his treating physician, is free to conclude that the individual's allegations of pain are reasonably consistent with the medical signs and findings and would result in the stated restrictions in the individual's RFC. The final decision in the case would then be based on the evaluation of the individual's ability to work in consideration of his RFC, and his age, education, and work experience.

In example 2, a different situation is presented. In this example, the objective medical evidence supports a finding that the claimant has a severe physical impairment but does not substantiate the alleged degree of limitation due to pain. As is proper, consideration has been given to the possibility of a mental impairment, but the treating physician states there is no psychiatric condition and the evidence supports this statement. A further review of the medical evidence fails to establish the presence of any objective findings, (e.g., muscle spasm, sensory or motor loss, leg pain, or muscle wasting, etc.), typically associated with the type of functionally limiting back pain alleged by the claimant. Thus, the evidence does not support a reasonable conclusion that additional pain-related physical or functional restrictions exist beyond those imposed by the effects of the documented spinal fusion.

However, the adjudicator, as explained in DI 00401.570D, must be aware that symptoms, such as pain, can result in greater severity of impairment than may be clearly demonstrated by the objective physical manifestations of a disorder. Thus, before a complete evaluation of this individual's

RFC can be made, a full description of the individual's prior work record, daily activities and any additional statements from the claimant, his or her treating physician or other third party relative to the alleged pain must be considered. Only then is it possible to fully assess whether the pain is reasonably consistent with the objective medical findings and to determine RFC.