USCA1 Opinion

 

 March 13, 1995 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1618 MILAGROS SOSA, Plaintiff, Appellant, v. SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Hector M. Laffitte, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, ______________ Campbell, Senior Circuit Judge, and ____________________ Boudin, Circuit Judge. _____________ ____________________ Aurelio Saliva Mattei on brief for appellant. _____________________ Guillermo Gil, United States Attorney, Maria Hortensia Rios, ______________ _____________________ Assistant United States Attorney, and Nancy B. Salafia, Assistant _________________ Regional Counsel, Department of Health and Human Services, on brief for appellee. ____________________ ____________________ Per Curiam. Milagros Sosa (claimant) appeals from a ___________ district court judgment affirming the decision of the Secretary of Health and Human Services to deny her application for disability benefits. For the reasons outlined below (and enumerated at greater length in the magistrate-judge's report), we find substantial evidence in support of the Secretary's decision and therefore affirm. Claimant is a married, 38-year-old mother of two who was employed as a bank teller and loan clerk until December 1987. She alleges that she has been disabled since that date due to the following series of ailments: (1) vascular insufficiency and thrombophlebitis of the legs; (2) painful fibromyositis and arthritis of the back; (3) vertigo; and (4) nervous depression. Following a hearing, the administrative law judge (ALJ) found that claimant's leg condition, while restricting her ability to stand for extended periods and thus precluding a return to her past job, did not prevent her from performing sedentary work. In turn, the ALJ determined that claimant's remaining ailments imposed only minimal functional restrictions, such that her ability to perform the full range of sedentary work was not significantly compromised. Applying Rule 201.29 of the Grid, see 20 C.F.R. Part 404, Subpart P, App. 2, the ALJ ___ reached a finding of not disabled. Claimant now argues that such findings were unsupported by substantial evidence and, more specifically, that it was error not to hear from a vocational expert. We disagree. Abundant record evidence supports the conclusion that the exertional restrictions imposed by claimant's leg condition did not preclude performance of sedentary work.1 Claimant has had two episodes of thrombophlebitis2: in February 1987 (three weeks after the birth of her first child) and again in September 1988 (in the midst of her second pregnancy). Both episodes were successfully treated over a period of days. Otherwise, she has suffered from chronic venous insufficiency with recurrent edema3 and pain (consistent with a post-phlebitic syndrome)--for which medication and the use of elastic socks have been prescribed. The physician who treated claimant between January and July 1988 (Dr. Munoz) specifically reported that she was capable of sedentary activity, identifying her only functional limitation as an inability to stand or walk for extended periods. Much of the other evidence was to the same effect. For example, a neurologist (Dr. Scarano Garcia) in August 1988 described claimant's ability to walk on heels or toes  ____________________ 1. Sedentary work involves lifting no more than ten pounds at a time and "occasional" walking and standing. 20 C.F.R. 404.1567(a). 2. Thrombophlebitis is the inflammation of a vein associated with blood clot formation. 3. Venous insufficiency involves the inadequate drainage of venous blood. Edema is the accumulation of excessive fluid in cells or tissues. -3- as being within normal limits. In December 1988, three months after claimant's second bout of thrombophlebitis, a non-examining physician (Dr. Arzola) completed a residual functional capacity assessment noting only minor limitations in this regard. And in October 1989, a vascular surgeon (Dr. Ramirez Ferrer) found some swelling in claimant's legs but no other complications. Notwithstanding the contrary indications in the record,4 such evidence provides ample support for the ALJ's conclusion. In turn, we think the ALJ was warranted in finding that the functional restrictions imposed by claimant's remaining ailments were minimal. As to her complaints of back pain, the ALJ found that claimant suffered from impairments capable of producing pain, but then proceeded to discount the severity of those complaints. The record reveals that claimant experienced a back sprain in 1982, for which she received physical therapy and was awarded a five percent state disability. More recently, claimant was treated for pain in the right shoulder in February 1988. Raising of the arm was found to cause suppression of the subclavian artery, but neurological testing was otherwise normal; the treating  ____________________ 4. Most notable among these was the evaluation of one treating physician (Dr. Quinones Soto), who in December 1987 recommended bed rest for six months and, in April 1988, reported that claimant was totally disabled. He stopped treating claimant in December 1987, however, giving way to Dr. Munoz. As mentioned, the latter described a more benign condition. -4- physical therapist (Dr. Oms) reported an impression of fibromyositis. Similarly, in August 1988, a neurologist (Dr. Rodriguez Del Valle) diagnosed a painful syndrome in the cervical and dorsal region, of unknown origin, when the right arm was raised. Nonetheless, muscle strength, reflexes and sensibility were all within normal limits. That same month, another neurologist (Dr. Scarano Garcia) reported normal range of motion in the cervical, thoracic and lumbar regions, along with normal muscle tone in all extremities. On the basis of such evidence, and on the basis of his questioning of claimant in accordance with Avery v. Secretary of HHS, 797 F.2d 19 (1st Cir. 1986), the _____ ________________ ALJ justifiably concluded that most of her pain was effectively controlled through therapy and medication. And any residual limitation on claimant's ability to raise her right arm over her head would have little bearing on her capacity to perform sedentary work. Claimant first complained of vertigo in July 1988, during the middle of her second pregnancy. Following a brief hospitalization therefor (as well as for pregnancy-related vomiting), she was treated over the next month by a neurologist (Dr. Scarano Garcia). Results of extensive neurological testing, including a brain scan and an EEG, were normal except for a mild head tremor; no cause was found for her vertigo. More important, there is no record of any further treatment for this condition after August 9, -5- 1988. Indeed, there is no evidence that claimant thereafter made any further complaints in this regard to medical personnel--apart from allegations voiced to a psychiatrist in January 1990. The ALJ thus was warranted in regarding claimant's vertigo as a short-lived affliction. Finally, substantial evidence supports the ALJ's conclusion that claimant's mental condition was of minimal severity. Claimant alleges that she has suffered therefrom since the age of thirteen. Yet she received no psychiatric treatment from at least 1980 onwards, and made no mention of such a condition to any of her treating physicians. A psychiatrist (Dr. Toro) who examined claimant in January 1989, shortly before she delivered her second child, diagnosed only a "mild" generalized anxiety disorder. In particular, he reported that claimant cared for her son, performed some housework with the help of others, attended to her own personal needs without supervision, and was capable of normal interpersonal relationships. It was within the ALJ's prerogative to credit Dr. Toro's findings over those reached one year later by a second psychiatrist (Dr. Bocanegra). And even the latter, we note, recorded a diagnosis of only "moderate" dysthymia. We therefore find substantial evidentiary support for the ALJ's conclusions. We likewise conclude that it was unnecessary to hear vocational evidence. As explained, the ALJ was warranted in finding that claimant's nonexertional -6- impairments had only a minimal impact on her ability to perform the full range of sedentary work. Under such circumstances, reliance on the Grid to yield a finding as to disability was appropriate. See, e.g., Heggarty v. ___ ____ ________ Sullivan, 947 F.2d 990, 995-96 (1st Cir. 1991) (per curiam); ________ Ortiz v. Secretary of HHS, 890 F.2d 520, 524-25 (1st Cir. _____ _________________ 1989) (per curiam). Affirmed. _________ -7-