**Paul G. PICARD, Plaintiff,**

v.

**Linda S. McMAHON[1] Commissioner of the Social Security Administration, Defendant.**

**Civil Action No. 05–12564–WGY.**

United States District Court,
D. Massachusetts.

Feb. 5, 2007.

---

**1.** On January 22, 2007, Linda S. McMahon became the acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Linda McMahon was substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

Maria L. Nunez, Green & Greenberg, Providence, RI, for Plaintiff.

Eugenia M. Carris, United States Attorney's Office, Boston, MA, for Defendant.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

The plaintiff, Paul G. Picard ("Picard"), seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("the Commissioner") denying his application for Social Security Disability Insurance ("SSDI") benefits.

Picard asserts that the Commissioner's decision is legally erroneous and not based on substantial evidence. Accordingly, Picard asks the Court either to reverse and set aside the Commissioner's decision or to remand Picard's claim for further proceedings pursuant to 42 U.S.C. § 405(g).

## I. BACKGROUND

Picard, born on March 5, 1948, is a 58–year–old man who attained a General Equivalency Diploma and served as a police officer with the New Bedford Police Department from 1971 to 1989. Administrative Record ("R.") at 28, 65. Past work experience relevant to Picard's claim for SSDI benefits also includes employment as a security guard, restaurant host, and sales representative. R. at 28.

On June 18, 2003, Picard applied for SSDI benefits claiming disability as of December 15, 2002. R. at 91–93. Picard claimed that triple bypass surgery and heart valve replacement restricted his ability to work. R. at 122. He cited shortness of breath, fatigue, lack of strength, and an inability to concentrate as particularly limiting. *Id.* The Social Security Administration denied Picard's application for benefits on November 10, 2003 and his request for reconsideration on May 5, 2004. R. at 67–69, 71–73. Following Picard's timely request, an oral hearing was conducted on July 15, 2005 before

Administrative Law Judge Martha Bower ("hearing officer"). R. at 27. Picard was represented by counsel at the hearing and continues to be represented in the current proceedings. *Id.*

On August 23, 2005, the hearing officer decided Picard was not disabled within the meaning of the Social Security Act and therefore was not entitled to SSDI benefits. R. at 22–23. The hearing officer found that Picard was severely impaired with respect to his ischemic heart disease, degenerative joint disease of the left shoulder, and history of degenerative joint disease of the knees. R. at 22. The hearing officer found that these impairments did not meet or equal a listed impairment. *Id.* The hearing officer further found that Picard retains the residual functional capacity to perform work at the light exertional level and concluded that his medically determinable impairments do not prevent him from performing his past relevant work. R. at 22–23.

On October 21, 2005, Picard's timely request for review of the hearing officer's decision was denied by the Appeals Council, rendering the decision of the hearing officer the final decision of the Commissioner. R. at 6. On December 20, 2005, Picard filed a Motion for Order Reversing the Decision of the Commissioner and Remanding for Further Proceedings. Pl.'s Mot. for Order [Doc. No. 7].

Picard's medical history is extensive. Prior to the alleged onset date of disability, he underwent cobalt treatment for Hodgkin's disease, had a bullet removed from his knee, had surgery to repair damage sustained to his right shoulder during a riot, and had surgery to repair ulnar nerve damage in his wrist. R. at 163–164, 305–306.

Picard's medical records reveal several relevant conditions during the period of

alleged disability. In August 2002, Picard consulted with Dr. Richard Jaslow, an orthopedic surgeon, regarding left shoulder pain. R. at 172. After MRI testing revealed prominent degenerative changes, Picard underwent elective surgery to resolve the condition. R. at 168, 170–171. When symptoms of left arm pain and numbness persisted, however, Dr. Jaslow advised Picard that the symptoms might stem from a cardiac condition. R. at 167.

Upon consultation with Dr. William E. Caplan, a cardiologist, and following appropriate diagnostic testing, Picard underwent coronary artery bypass grafting and aortic valve replacement on May 28, 2003. R. at 201–02, 224. Post-surgery meetings with the cardiac surgeon, Dr. Sary F. Aranki, and primary care physician, Dr. Robert A. Browne, indicate that from a cardiac standpoint, Picard is asymptomatic. R. at 251, 321.

In June 2004, Picard consulted with Dr. Michael Hait, a rheumatologist, regarding pain in his great toe on his right foot. R. at 327–328. Having previously been prescribed an anti-inflammatory drug to resolve the issue, Picard reported to Dr. Hait that his pain had decreased from excruciating to a 2/10 intensity level. *Id.* Dr. Hait's reports indicate that despite Picard's complaints of pain in his great toe, he had full range of motion at the joint and there were no signs of active inflammation. R. at 327. Dr. Hait provided Picard with a thumb splint to be worn during activity. *Id.*

In August 2004, Picard returned to Dr. Jaslow for resolution of his toe condition. R. at 317. X-rays showed moderate arthritis and in September 2004, Dr. Jaslow performed a fusion of the troubled joint. R. at 315–318. Subsequently, it was determined that a surgical screw was causing non-union to occur at the fusion site and in December 2004, Picard underwent surgery to remove the screw. R. at 320.

In addition to physical impairments, Picard has been prescribed Xanax to treat symptoms of anxiety and Lexapro to treat symptoms of depression. R. at 127, 161. Picard has never received independent inpatient or out-patient psychiatric treatment but did participate in two consultative evaluations in connection with his claim for SSDI benefits: a psychological evaluation with Dr. Eithne Keenan in October 2003; and a psychiatric evaluation with Dr. James K. Sullivan in January 2005. R. at 42–43, 260–265, 304–312.

## II. STANDARD OF REVIEW

The Court's review of a SSDI benefit determination is limited under the Social Security Act, which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Supreme Court has described the "substantial evidence" standard of review as requiring "more than a mere scintilla." The standard means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

In applying this standard, "it is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record [of] evidence." *Ortiz v. Secretary of Health and Human Servs.*, 955 F.2d 765, 769 (1st Cir.1991) (citing *Rodriguez v. Secretary of Health and Human Servs.*, 647 F.2d 218, 222 (1st Cir.1981)). Therefore, the Court must "affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported

by substantial evidence." *Rodriguez Pagan v. Secretary of Health and Human Servs.*, 819 F.2d 1, 3 (1st Cir.1987) (citing *Lizotte v. Secretary of Health and Human Servs.*, 654 F.2d 127, 128 (1st Cir.1981)).

As claimant, Picard has the burden to establish through credible evidence that he was disabled as defined by the Social Security Act. *Santiago v. Secretary of Health and Human Servs.*, 944 F.2d 1, 5 (1st Cir.1991). Therefore, Picard must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, Picard must show one or more medical impairments of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." *Id.* § 423(d)(2)(A).

## III. ANALYSIS

Upon consideration of the entire record, the hearing officer found that the "claimant has the residual functional capacity to perform work at the light exertional level"[2] and therefore is not disabled under the Social Security Act. R. at 22. Picard argues that (1) the hearing officer erred in finding that Picard's mental illness was not a "severe" medical impairment, (2) the hearing officer erred in finding that Picard's subjective statements regarding his symptoms and limitations were not fully credible, (3) the hearing officer's residual functional capacity assessment was not supported by substantial evidence, and (4) the hearing officer's conclusion that Picard could perform his past relevant work was not supported by the requisite findings of fact. Pl.'s Mem. in Support of Motion to Remand [Doc. No. 8] ("Pl.'s Mem.") at 7, 10, 15–16, 18.

## A. Alleged Mental Impairment

The Commissioner has set forth a five-step analysis for determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a)(4). The first analytical step requires a finding that the claimant is not currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). As Picard was not employed at the time of his claim and continues to be unemployed, the hearing officer proceeded to step two of the analysis to determine whether Picard had a severe medical impairment that impacted his ability to perform basic work-related functions. R. at 15.

An impairment is characterized as non-severe if it "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). A person who is able to perform basic work activities has abilities and aptitudes necessary to do most jobs. Examples of such abilities and aptitudes include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, using judgment, and responding appropriately to usual work

---

**2.** Specifically, the hearing officer found that Picard is "able to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk up to six hours in an eight-hour workday, and sit for up to six hours in an eight-hour workday; but he is restricted from repetitive climbing of ropes, ladders, and scaffolds and repetitive stooping, kneeling, crouching, crawling, and overhead reaching." R. at 22–23.

situations and changes to such routines. *Id.* § 404. 1521(b).

■ The hearing officer found that Picard was severely impaired with respect to ischemic heart disease, degenerative joint disease of the left shoulder, and history of degenerative joint disease of the knees. R. at 18. The hearing officer found, however, that Picard did not have a severe mental impairment. *Id.*

Picard contests the hearing officer's determination that his alleged mental impairments are non-severe, in that they do not significantly limit his ability to work. Pl.'s Mem. at 7. Picard asserts that this finding is erroneous because there is substantial evidence on record to support a finding that his alleged mental impairment was severe. *Id.*

In determining that Picard's alleged mental impairments are non-severe, the hearing officer relied on both the evidentiary record and testimony given at the hearing. R. at 17. At the time of his initial application for disability, Picard did not claim to have depression or anxiety. R. at 122. During the October 2003 psychological examination with Dr. Keenan, Picard acknowledged he had never sought mental health services. R. at 261. While Picard complained of memory loss, Dr. Keenan's use of the Wechsler Memory Scale III revealed that Picard's memory functioning was on par with other members of his age group. R. at 262. Additional mental testing similarly revealed that Picard's attention and concentration were unimpaired and that his cognitive functioning was within the normal range. R. at 262–63. Finally, Picard testified that since he started taking Lexapro, his depression had been alleviated. R. at 42.

Picard, however, cites specifically the January 2005 psychological examination performed by Dr. Sullivan and his own subjective statements as to the severity of his mental impairments, and argues that this evidence was not given proper consideration by the hearing officer. Pl.'s Mem. at 9–10. The hearing officer, however, addressed this evidence. R. at 17–18. With respect to the January 2005 examination, the hearing officer stated that as it was "[o]btained shortly before the hearing by arrangement with the claimant's attorney representative, the evaluation appears to be designed to *prove* the claimant's mental disability." R. at 17. The hearing officer also pointed to discrepancies between Picard's own statements in the record indicating mild problems with depression that improved once treated and Dr. Sullivan's conclusion that Picard is "totally disabled." *Id.* The hearing officer found the January 2005 psychological examination inconsistent, both internally and in relation to the entire evidentiary record. R. at 18.

When opinion evidence is inconsistent, it must be weighed along with the entire evidentiary record to see whether a disability determination can be made. 20 C.F.R. § 404.1527(c)(2). There are several factors by which medical opinions should be evaluated, including (1) the examining relationship, (2) the treatment relationship (length of the relationship and frequency of evaluation, as well as nature and extent of the relationship), (3) supportability, (4) consistency, and (5) specialization. *Id.* § 404.1527(d)(1)-(5). Although consideration will be given to opinions by medical sources, the Commissioner reserves the right to make all determinations of disability and residual functional capacity. *Id.* § 404.1527(e)(2).

The hearing officer's assessment of Picard's January 2005 psychological evaluation is consistent with the framework set out in the regulations. The hearing officer looked at the examining and treatment

relationship between Picard and Dr. Sullivan, particularly its limited nature and extent as well as the lack of objective medical evidence in the record that would support Dr. Sullivan's opinion. R. at 17–18. The hearing officer focused on the discrepancy between Dr. Sullivan's opinion that Picard's activities of daily living were restricted to a moderately severe degree and as well as his notation that Picard is "able to attend to [activities of daily living] such as hygiene and is able to socialize with family members." *Id.* This Court therefore concludes that the finding of the hearing officer was supported by substantial evidence when she determined Picard's alleged mental impairment to be non-severe under the Social Security Act.

**B. Residual Functional Capacity**

At step three of the disability evaluation process, the hearing officer determined that Picard's physical impairments, while severe, did not meet or medically equal an impairment listed in the regulations. R. at 18. Thereafter, the hearing officer proceeded to step four of the analysis which requires assessment of the claimant's residual functional capacity with respect to their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).

The Social Security Administration generally defines one's residual functional capacity as the extent to which an individual's physical or mental impairments limit their ability to do work-related activities. 20 C.F.R. § 404.1545. Consideration must be given to all symptoms alleged by the claimant, including pain, and the extent to which those symptoms are consistent with other evidence on record. *Id.* § 404.1529. Consideration must also be given to any medical opinion that speaks to the nature and severity of physical or mental impairments and to what, if any, limitations re-

sult from such impairments. *Id.* § 404.1527.

To determine the residual functional capacity, the hearing officer looked both at Picard's subjective statements of pain and other symptoms, as well as the opinions and reports of Picard's treating and evaluating physicians. R. at 20–21. Picard argues that the hearing officer erred in finding his subjective statements of pain and resultant limitations not credible. Pl.'s Mem. at 10. Picard further argues that the hearing officer's determination of his residual functional capacity was not supported by substantial evidence and that the determination that Picard is able to perform past relevant work was not supported by the requisite findings of fact. *Id.* at 15–16.

**1. Evaluation of subjective statements**

■ "The credibility determination by the [hearing officer], who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Secretary of Health and Human Servs.,* 829 F.2d 192, 195 (1st Cir.1987).

The Commissioner has issued guidelines for assessing a claimant's subjective statements of pain. 20 C.F.R. § 404.1529. Consideration is given to all subjective statements of symptoms and any provided description of how the symptoms affect a claimant's activities of daily living or ability to work and to the extent that the subjective statements are supported by objective medical evidence. *Id.*

■ The First Circuit has held that when a hearing officer discredits a claimant's subjective statements regarding their pain or physical limitations, the hearing officer's determination must be supported

by substantial evidence, and that the hearing officer "must make specific findings as to the relevant evidence [she] considered in determining to disbelieve the [claimant]." *Da Rosa v. Secretary of Health and Human Servs.*, 803 F.2d 24, 26 (1st Cir.1986). In cases where subjective allegations of pain are not directly supported by objective medical findings, the hearing officer is to "obtain detailed descriptions of daily activities by directing specific inquiries about the pain and its effects on the claimant." *Avery v. Secretary of Health and Human Servs.*, 797 F.2d 19, 28 (1st Cir.1986).

 In finding that Picard retains the residual functional capacity to perform work at the light exertional level, the hearing officer stated that she "carefully considered" Picard's subjective allegations and "found them to be less than fully credible." R. at 20. At the July 15, 2005 hearing, the hearing officer had questioned Picard extensively about his work-related limitations, relevant work experience, medical history, medical treatment, frequency and intensity of pain and other symptoms, alleged mental impairments, daily routine, and social interaction with family and friends. R. at 31–50. In discrediting Picard's subjective statements, the hearing officer relied upon Picard's testimony at the hearing, as well as upon the testimony and reports of his treating and evaluating physicians and the objective medical evidence on record. R. at 20–21.

First, the hearing officer stated that at the July 15, 2005 hearing, Picard denied active participation in sporting activities such as hunting, fishing, and golfing, but was unable to explain statements to his treating physicians that contradict this assertion. R. at 20.[3] With evidence from three independent sources of subjective statements made by Picard that directly contradicted his testimony, the hearing officer found significant issues of credibility. *Id.* Moreover, the hearing officer found that the claimant's assertion that he was unable to function normally about half the time because of musculoskeletal problems was not supported by objective medical evidence. *Id.* The hearing officer found that the treatment record reflected few specific complaints of back pain, neck pain, shoulder pain, knee pain, fatigue, or swelling. *Id.* The hearing officer also noted that Picard testified that his most limiting physical impairment was problems with his knees, yet the hearing officer noted that Picard has received almost no relevant treatment for his knees during the period of alleged disability. R. at 20–21.

The hearing officer also considered the opinions of Picard's treating and evaluating physicians as to how Picard's pain or other symptoms might limit his work activity. R. at 21. The hearing officer focused on Dr. Browne's July 2005 report, R. at 336–39, finding it to be inconsistent and awarding it little probative weight. R. at 21. Specifically, the hearing officer found virtually no objective medical support on record for Dr. Browne's determination that Picard is limited to less than a full range of sedentary work. *Id.* The hearing officer noted that Dr. Browne's own records prior to the July 2005 report indicated that Picard was active and "completely

**3.** In October 2003, Dr. Keenan noted that Picard "passes the time watching sports on television or working on small hobbies in the home. He also hunts and fishes." R. at 262. In June 2004, Dr. Hait wrote, "The patient is able to function and perform all activities of daily living, as well as sporting events." R. at 327. Finally, in September 2004, Dr. Browne wrote that Picard "said that the symptoms of arm pain and shortness of breath before his cardiac catheterization in May of 2003 did not recur after his bypass. He plays golf, bowls, walks, and is fairly active without any problems." R. at 330.

asymptomatic." *Id.* (citing R. at 330). The hearing officer also found that Dr. Browne's July 2005 report was directly contradicted by Picard's other treating and evaluating physicians.

When supported by specific findings, the determination of a hearing officer regarding the credibility of subjective statements of symptoms such as pain is to be given deference by courts. *Ortiz*, 955 F.2d at 769. In finding Picard's subjective statements regarding his symptoms and limitations less then credible, the hearing officer in this case made specific findings of fact supported by substantial evidence. The Court will therefore defer to the hearing officer's credibility determinations.

### 2. Residual Functional Capacity assessment and past relevant work

▉ Picard further argues that the evidentiary record demonstrates that he does not have the ability to perform work at the light exertional level. Pl.'s Mem. at 17. Picard cites "chronic symptoms from [his] pains in his joints due to numerous injuries" and "symptoms from his depression and anxiety" as preventing him from engaging in full-time work. *Id.*

The Social Security Administration has issued a policy interpretation ruling regarding the assessment of one's residual functional capacity. SSR 96–8p. The ruling requires that a residual functional capacity assessment be based on all relevant evidence [4] and that adjudicators "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* The ruling instructs adjudicators to provide a narrative discussion "describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and

nonmedical evidence (e.g., daily activities, observations)." *Id.*

In assessing Picard's residual functional capacity, the hearing officer complied with the mandates of SSR 96–8p and her determination is supported by substantial evidence on record. When addressing Picard's residual functional capacity, the hearing officer engaged in comprehensive review of the evidentiary record and provided a narrative discussion of both medical and non-medical evidence that support her findings. The hearing officer addressed Picard's written statements regarding his physical impairments and limitations, his daily routine, and his social interactions. R. at 19. The hearing officer also assessed Picard's medical history and the objective medical evidence on record in light of Picard's own statements, as well as the opinion and recommendations of his treating and evaluating physicians. R. at 20–21.

Based on this thorough analysis, the hearing officer made several findings as to Picard's residual functional capacity. The hearing officer found that as a result of his shoulder problems, Picard is limited in his ability to perform overhead reaching and because of knee problems is unable to perform tasks requiring stooping, kneeling, or crouching. R. at 20. The hearing officer went on to find that despite these limitations, Picard retains a "significant functional capacity" and is able to perform work at the light exertional level. *Id.* In making her determination the hearing officer complied with the relevant Social Security regulations.

### C. Past Relevant Work

▉ After finding that Picard retained the residual functional capacity to perform work at the light exertional level, the hear-

---

**4.** Relevant evidence includes medical history, medical signs and laboratory findings, reports

of daily activities, medical source statements, and effects of symptoms. *Id.*

ing office proceeded to assess Picard's ability to perform his past relevant work. R. at 21–22. Social Security regulations generally define "past relevant work" as that which was performed within the last 15 years. 20 C.F.R. § 404.1565(a). Further, the work must have been substantial gainful activity. *Id.*[5] Picard argues that the hearing officer's determination at this step in the disability evaluation process was flawed because the hearing officer failed to make required specific findings of fact. Pl.'s Mem. at 18.

In determining that Picard is capable of performing his past relevant work as a security guard, a restaurant host, and a sales representative, the hearing officer relied on several sources of evidence. R. at 23. At the July 15, 2005 hearing, an impartial vocational expert testified as to the skill and exertional level of Picard's past relevant work. R. at 60–61.[6] The expert responded to several questions regarding a hypothetical claimant of the same age, education, work experience and residual functional capacity as Picard. The expert testified that given all relevant factors, the hypothetical claimant could perform Picard's previous relevant work. R. at 61. On the basis of the record, this Court holds that the hearing officer's determination that Picard retains the ability to perform his past relevant work is supported by substantial evidence.

## IV. CONCLUSION

For the foregoing reasons, the Court rules that there is substantial evidence of record to support a finding that Picard is not entitled to SSDI benefits. Accordingly, the Commissioner's Motion for Order Affirming Decision of Commissioner [Doc. No. 9] is ALLOWED and Picard's Motion to Remand [Doc. No. 7] is DENIED.

SO ORDERED.

---

**5.** Substantial work activity involves significant physical or mental activities; work activity can be considered substantial even if done on a part-time basis. *Id.* § 404.1572(a). Work activity may be considered gainful if it is usually done for pay or profit, whether or not such a profit is realized. *Id.* § 404.1572(b).

**6.** The vocational expert testified that Picard's former work as a security guard and as a restaurant host was light and semiskilled; Picard's former work as a sales representative was light and skilled. R. at 60.