915 F.2d 1557
 Unpublished Disposition
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Iluminado Morales MULERO, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 90-1140.
 United States Court of Appeals, First Circuit.
 Sept. 19, 1990.
 
 Appeal from the United States District Court for the District of Puerto Rico, Juan M. Perez-Gimenez, District Judge.
 Salvador Medina De La Cruz on brief, for appellant.
 Daniel F. Lopez Romo, United States Attorney, Jose Vazquez Garcia, Assistant United States Attorney, and John F. Aronson, Assistant Regional Counsel, Region I, Department of Health and Human Services, on brief, for appellee.
 D.P.R.
 AFFIRMED.
 Before BREYER Chief Judge, and LEVIN H. CAMPBELL and CYR, Circuit Judges.
 PER CURIAM.
 
 
 1
 We have reviewed the parties' briefs and the record on appeal. We affirm the judgment of the district court essentially for the reasons stated in the district court's opinion and order dated November 30, 1989. We add the following comments.
 
 
 2
 1. We first note that many of the claimant's objections are supported by citations to an ALJ decision, Transcript (Tr.) at 42-49, which was vacated upon a previous remand by the district court. Tr. at 293. Although both the vacated decision and the succeeding decision found the claimant not disabled because he has the residual functional capacity (RFC) to perform the full range of sedentary work, the only ALJ decision properly before us on review is that found at Tr. 241-48. Accordingly, we limit our discussion to the extent that claimant's objections appear applicable to that decision.
 
 
 3
 2. Contrary to claimant's contention, he does not meet Listing 4.04B3 of 20 C.F.R. Part 404, Subpart P, Appendix 1. That listing requires
 
 
 4
 Resting ECG findings showing an ischemic configuration or current of injury (see 4.00F1) with ST segment elevation to 2 mm. or more in either (a) leads I and a VL and V6 or (b) leads II and III and a VF or (c) leads V3 through V6.
 
 
 5
 (Emphasis added.) The alleged record support to which the claimant refers, Transcript (Tr.) at 175, indicates that the claimant exhibited an ST segment elevation to .4 mm., which is less than 2 mm. In addition, the medical advisor (MA), Dr. Roberto Rodriguez, testified that the claimant did not meet the listings requirement for the cardiovascular system. Tr. at 284.
 
 
 6
 3. The claimant's major contention is that the ALJ improperly relied on the Grid, 20 C.F.R. Sec. 404, Subpart P, Appendix 2, disregarding the claimant's nonexertional limitation of pain, and that the testimony of a vocational expert (VE) was needed. The ALJ did not fail to consider the claimant's allegations of pain. Indeed, the underlying premise of the claimant's application for disability benefits is his allegations of disabling chest pain. We conclude that, in the present case, the ALJ's determination of the frequency and severity of pain is supported by substantial evidence.
 
 
 7
 The claimant was first hospitalized on 6/20/85 after experiencing what he described as oppressive chest pain radiating to the arms and left leg, shortness of breath, cold sweating and nausea, while working in his yard. Tr. at 154. On 6/22/85, he was transferred from the Cardiac Care Unit to a regular medical ward. Tr. at 176-77. During the course of his hospitalization, a chest x-ray was negative, a EKG revealed "non diagnostic ST changes", and a stress test produced a "normal study." Tr. at 182. He "responded well to medication" and was discharged on 6/28/85 in "stable condition" with a diagnosis of unstable angina and arterial hypertension. Tr. at 187-88. He was seen thereafter for follow-up treatment at either the hospital or at a clinic, periodically complaining of occasional oppressive chest pain and shortness of breath. Tr. at 189; 202.
 
 
 8
 In his testimony before the ALJ, the claimant stated that he has chest pain when he walks, climbs stairs, exercises, or bends over. Tr. at 59; 264. He gets the pain often. Id. He takes nitroglycerin, which relieves the pain "instantaneously," but the pain sometimes returns an hour to two hours later. Tr. at 60; 265. He sometimes gets pain when lying down because occasionally he wakes up with chest pain. Tr. at 60; 266. He also stated that, when he exerts himself, he experiences dizziness, almost always accompanied by the chest pain, but that he does not experience dizziness while sitting. Tr. at 63; 276. With respect to daily activities, the claimant stated that he walks in the house and in the yard a little; he can walk "a while" if it is on flat ground; he cannot stand more than two hours because his legs get swollen; he can sit but feels uneasy and does not like to remain sitting for long; he reads the newspaper only "very little" and watches television; he occasionally attends church; and he "almost always" takes care of his own personal grooming. Tr. at 270-72.
 
 
 9
 Aside from the stress test conducted during his 1985 hospitalization, which produced a "normal study", Tr. at 182, the claimant underwent another stress test on September 16, 1987[1], pursuant to a remand by the district court. Tr. at 290-91; 303-12. The results of this test, however, were "undetermined" since, according to the testing physician, "[t]est stopped by patient after only 2 min. exercise time when he jumped out of belt, complaining of chest pain, dizziness in severe state of anxiety." Tr. at 303. The claimant's version is that he "fell" and got nauseous. Tr. at 274-75. Dr. Rodriguez, the MA and an internist and cardiologist, testified that during the stress test the claimant's blood pressure went up but there were no changes in the EKG. Tr. at 282. A cardiovascular examination performed the same day as this second stress test produced a diagnosis of:
 
 
 10
 1. Arterial Hypertension: essential, uncontrolled
 
 2. Grade II hypertensive retinopathy[2]
 3. Costocondritis[3]
 
 11
 4. Chest pain, r/o [rule out] Coronary artery disease.
 
 
 12
 Tr. at 315.
 
 
 13
 It was the MA's opinion that the claimant is overweight and has episodes of severe hypertension, associated with stress, in which he hyperventilates, experiences dizziness, cold sweats, and chest pain produced by osteochondritis.[4] Tr. at 283. The MA further testified that the claimant, in the space of 8 hours, could walk 2 or 3 hours with intervals of rest, and could sit "indefinitely," and that the claimant should not lift objects weighing more than 20 pounds. Tr. at 285-86.
 
 
 14
 We are confident that the ALJ considered the claimant's complaints of pain in accord with this court's decision in Avery v. Secretary of Health and Human Services, 797 F.2d 19 (1st Cir.1986). The ALJ carefully questioned the claimant about his prior work record, Tr. at 262-64, the description, frequency, and duration of his pain symptoms, Tr. at 264-69, and his daily activities, Tr. at 270-72. See Avery v. Secretary of Health and Human Services, 797 F.2d at 23. The ALJ's evaluation of the evidence, Tr. at 245-46, also notes occasions when the claimant voiced complaints of pain to treating, and other examining, physicians. Id. Lastly, the ALJ noted that at the hearing, "the claimant was observed without signs which could be associated with a severe distressful pain. He did not appear to be preoccupied with personal discomfort and he answered questions calmly, clearly, logically, and alertly." Tr. at 246. We believe that this breadth of information considered is a sufficient basis upon which to make a determination as to the credibility of the claimant's complaints of pain. We further believe that the ALJ's determination as to the frequency and intensity of pain, crediting the claimant's complaints only insofar as to preclude all but sedentary work, is supported by substantial evidence. See Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir.1987).
 
 
 15
 Based on an examination of the medical evidence in the record, and an opportunity to listen to, and observe the claimant at the hearing, Dr. Rodriguez, the MA testified that the claimant could walk 2 or 3 hours with intervals of rest within the space of 8 hours, could sit indefinitely, and lift objects of no more than 20 pounds. Tr. at 285-86. This assessment is consistent with the capacity to do sedentary work, 20 C.F.R. Sec. 404.1567(a) (1990), and constitutes substantial evidence to support the ALJ's finding that the claimant can perform the full range of sedentary work. Rodriguez v. Secretary of DHHS, 893 F.2d 401, 403, (1st Cir.1989). Moreover, the ALJ was not precluded from relying on the Grid, despite crediting the existence of some pain. "The existence of a non-exertional impairment does not automatically preclude reliance on the Grid." Frustaglia v. Secretary of Health & Human Services, 829 F.2d at 195. In this case, the claimant, himself, testified that his pain largely occurs when he is walking, exercising, climbing stairs, or bending over. Tr. at 59; 264. "On occasion," he feels pain while sitting and prefers to keep moving. Tr. at 61; 270-71. The pain is relieved by medication. Tr. at 60; 265. He does not experience any dizziness while sitting. Tr. at 276. We conclude that the ALJ properly could determine that any limitation due to pain was not significant enough to limit access to the full range of jobs at the sedentary level, such that he could rely on the Grid without the necessity of the testimony of a vocational expert.
 
 
 16
 We have considered the remaining arguments of the claimant and find them neither meritorious nor warranting further discussion. For all the reasons stated above, the judgment of the district court is
 
 
 17
 Affirmed.
 
 
 
 [1]
 We note that the claimant's insured status expired as of March 31, 1986. The claimant must establish that he was disabled as of this date
 
 
 [2]
 Retinopathy is any noninflammatory disease of the retina. The Sloane-Dorland Annotated Medical-Legal Dictionary (Sloane-Dorland) 618 (1987). The MA testified that retinopathy grade II is "not severe," "relatively mild." Tr. at 287
 
 
 [3]
 Costo- is a combining form denoting relationship to the ribs. Dorland's Illustrated Medical Dictionary (Dorland's) 351 (24th ed. 1965). Chondritis is inflammation of cartilage
 Dorland's at 298.
 
 
 [4]
 Osteochondritis is inflammation of both bone and cartilage. Sloane-Dorland at 516 (1987)