45 F.3d 424
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
 Luis A. Rios VAZQUEZ, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 94-1793.
 United States Court of Appeals,
First Circuit.
 Jan. 23, 1995.
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jaime Pieras, II, Senior U.S. District Judge
 Juan R. Requena Davila and Juan A. Hernandez Rivera on brief for appellant.
 Guillermo Gil, United States Attorney, Maria Hortensia Rios, Assistant United States Attorney, and Eileen M. Cedrone, Assistant Regional Counsel, Region I, Department of Health and Human Services, on brief for appellee.
 D.Puerto Rico
 AFFIRMED.
 Before SELYA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and BOUDIN, Circuit Judge.
 PER CURIAM.
 
 
 1
 Luis A. Rios-Vazquez (claimant) appeals from a district court judgment affirming the decision of the Secretary of Health and Human Services denying his application for disability benefits. For the reasons stated below, we affirm.
 
 I.
 
 2
 Claimant was born on May 23, 1945, and applied for benefits when he was forty-four years old. He has an eighth grade education. In 1977, while working in Chicago as a crane operator, he lifted a steel object and became "stiff." After two more similar episodes, he was diagnosed in 1979 as having a herniated disc and underwent surgery on April 18, 1979. He was allowed to return to work on September 24, 1979, although he continued to experience some leg and back pain. In 1981, claimant returned to Puerto Rico and began working as a truck driver. His back pain worsened from time to time, especially when he drove for long periods of time. He also suffered pain and numbness in the legs. Claimant ceased working on February 26, 1989, and he has not worked since then. He is insured at least through March 11, 1991.
 
 
 3
 On February 28, 1990, claimant filed an application for disability benefits alleging disability since February 26, 1989 due to back pain and "frequent loss of balance." He claimed that his doctors had prohibited him from lifting anything heavy. Asked to describe his daily activities, he stated that he kept the area surrounding his home clean. Other activities included driving his car, reading the bible, visiting relatives, and going to church. The Social Security Administration denied claimant's application initially. On June 25, 1990, claimant requested reconsideration stating that his pain had worsened and that his nerves had been affected. Claimant's application was denied on reconsideration.
 
 
 4
 Claimant obtained a hearing before an Administrative Law Judge (ALJ) on February 11, 1991. He was represented by an attorney. At the hearing, claimant testified that he ceased working as a truck driver because of his back or waist pain. He described the pain as pretty severe, sometimes causing him to loose control of his leg. Although he takes pain medication, it does not provide full relief. He testified that he can take of his personal needs, and that he attempts to help his wife with the wash. In addition, he visits with company, reads a little, and goes to church. He also testified that he began seeking mental health treatment in July 1990 because he "felt nervous."
 
 
 5
 The ALJ found that although claimant has discogenic disease at L4-L5, he does not have an impairment or combination of impairments equivalent to one of the listed impairments. He also found that claimant is unable to perform his past relevant work, which required heavy lifting, but that claimant has the residual functional capacity for the full range of light work. With respect to claimant's alleged mental condition, the ALJ found that claimant has not presented a severe mental impairment which can be expected to last at least twelve months. Finally, the ALJ ruled that based on claimant's capacity for light work, as well as his age, education, and work experience, the Grid directs a conclusion of not disabled.
 
 
 6
 The Appeals Council denied review. An appeal was taken to the district court, where a magistrate-judge (magistrate) concluded that the Secretary's decision was supported by substantial evidence. The district court adopted the magistrate's report and recommendation. This appeal followed.
 
 II.
 
 7
 The medical record is well-summarized in the ALJ's and the magistrate's reports, and we need only provide a brief overview here. On April 18, 1979, claimant underwent a partial hemilaminectomy of L4 on the left with excision of L4-5 disc. Approximately five months later, he was sufficiently improved to return to work, although he was limited temporarily to lifting thirty pounds. He continued to feel back pain and was fitted with a flexion jacket. He was also advised to continue light work and exercise.
 
 
 8
 There is a gap in the medical record between August 1980 and August 1988. On August 26, 1988, claimant began treatment with Dr. Victor Burgos for lower back pain.[1] Dr. Burgos diagnosed claimant as suffering from discogenic disease, osteoarthritis, and muscle spasms. He prescribed various medications for claimant, including meclomen, voltaren, and norflex.
 
 
 9
 Between January 1989 and June 1990, claimant underwent physical therapy with Dr. Oscar Arroyo-Nieves. He diagnosed claimant as suffering from lumbar radiculopathy, status post laminectomy, degenerative joint disease, and chronic lower back pain.
 
 
 10
 On May 6, 1990, claimant was examined by a consulting neurologist, Dr. Nilda De Jesus Pla. The motor examination revealed that claimant walks dragging his right leg, but has good strength in the upper and lower extremities. Dr. De Jesus Pla did not observe atrophy or abnormal movements. Her examination of claimant's vertebral column revealed marked spasms in the paravertebral region, as well as mild spasms in the posterior region of the right thigh. A range of motion examination disclosed that claimant's forward bending is limited to forty-five degrees. An x-ray report showed a lumbar spondylolysis and myositis with disc disease at L5-L4. Dr. De Jesus Pla concluded that claimant's condition precludes him from returning to his past work as a truck driver.
 
 
 11
 Dr. Tomas Hernandez, a neurologist, evaluated claimant on June 11, 1990 and diagnosed him as suffering from a pinched nerve root in the right side. Dr. Hernandez opined that this condition, as well as the C.T. lumbar findings and claimant's symptomatology, disabled claimant totally and permanently from working.
 
 
 12
 Two residual physical functional capacity assessments, prepared by non-examining medical consultants, are consistent with the ALJ's finding that claimant has the capacity for light work. The latter assessment, dated August 26, 1990 and prepared by a consulting neurologist, concludes that "[t]here is no motor, sensory, or reflex deficit to account for [the] statement of inability to work."
 
 
 13
 Mental health records reveal that claimant sought treatment on June 6, 1990, complaining of bad humor, an upset stomach, difficulty sleeping, and a tight feeling in his chest. Claimant was diagnosed with anxiety disorder and prescribed xanax. He was otherwise found to be cooperative, coherent, relevant, and somewhat oriented. On July 31, 1990, claimant reported feeling better. On September 20, 1990, claimant stated that he felt frightened. He was continued on xanax. On December 20, 1990, claimant reported feeling better with medication.
 
 III.
 
 14
 Claimant contends that the ALJ erred in relying on the Grid to reach a conclusion of not disabled. In particular, he argues that his restricted ability to bend from the waist, as well as the pain he suffers, constitute non-exertional impairments. Under the circumstances, he contends, the testimony of a vocational expert was required to evaluate his claim.
 
 
 15
 Where a claimant's impairments involve only exertional limitations, the Grid provides a "streamlined" method by which the Secretary can make a determination whether there are jobs in the economy which the claimant can perform. See, e.g., Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991); Ortiz v. Secretary of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam). However, where a claimant has non- exertional impairments in addition to exertional limitations, the Grid may not be fully applicable. See 20 C.F.R. Part 404, Subpart P, App. 2, 200(e). The appropriateness of relying of the Grid in such a situation "depends on whether claimant's nonexertional impairment 'significantly affects [a] claimant's ability to perform the full range of jobs' at the appropriate strength level." Heggarty v. Sullivan, 947 F.2d at 996 (quoting Lugo v. Secretary of Health & Human Servs., 794 F.2d 14, 17 (1st Cir. 1986) (per curiam)).
 
 
 16
 With respect to claimant's restricted ability to bend from the waist, we note that both residual functional capacity assessments reported that claimant is capable of occasional bending. This is all that "light" work requires. Ortiz, 890 F.2d at 525; see also SSR 85-15 at 97 (CE 1985) ("If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact."). Under the circumstances, claimant's bending restriction did not preclude reliance on the Grid. See Ortiz, 890 F.2d at 525.
 
 
 17
 With respect to claimant's pain, we observe that the ALJ concluded that claimant's back pain "does not constitute a disabling factor upon his ability to perform tasks that do not exceed light exertional demands." The ALJ evaluated claimant's allegations of pain in accord with our decision in Avery v. Secretary of Health & Human Servs., 797 F.2d 19 (1st Cir. 1986). Claimant was questioned concerning his daily activities, functional restrictions, medication, frequency and duration of pain, and precipitating and aggravating factors. See id. at 28-29. The ALJ also reviewed the objective medical evidence. He found that apart from marked lumbar muscle spasms and some flexion difficulties, "claimant did not present gross neurological deficits or limited movements as to impose significant restriction at all exertional levels." The ALJ further noted that claimant performed full body movements at the hearing and was not distracted due to pain. We are persuaded that substantial evidence supports the ALJ's conclusion that claimant's pain does not impair his ability to perform light work. See Frustaglia v. Secretary of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987). Under the circumstances, there was no error in relying on the Grid.
 
 
 18
 Claimant also contends that the ALJ gave undue weight to the opinions of the Secretary's consulting physicians and too little weight to the opinions of his treating physicians. This is an apparent reference to recently promulgated regulations which describe how the Secretary will weigh medical opinions, and provide that, in general, the Secretary will give more weight to opinions from treating sources. See 20 C.F.R. Secs. 404.1502 (1991) (defining treating source), 404.1527(d) (1991) (explaining how the Secretary weighs medical opinions).[2] Assuming, without deciding, that these regulations are applicable here, we find no fault with the ALJ's decision on this score.
 
 
 19
 For the most part, the reports of claimant's physicians are fully consistent with those of the Secretary's physicians. The one exception is Dr. Hernandez' conclusory statement that claimant is totally and permanently disabled from working. However, the Secretary was not bound to accept this statement. First, it is by no means obvious that Dr. Hernandez should be considered a treating source. Claimant did not consult Dr. Hernandez until after the initial determination of no disability and apparently saw him on only two occasions. See 20 C.F.R. Sec. 404.1502 (1991) (defining treating source as a physician with whom claimant has had an "ongoing" relationship based on the need for treatment and not solely on the need to obtain a favorable report). Second, and more importantly, the determination of disability is reserved to the Secretary. See 20 C.F.R. Sec. 404.1527(e) (1991). There is ample evidence in the record as a whole to support the ALJ's conclusion that claimant retains the functional capacity for light work.
 
 
 20
 Claimant's remaining argument is that the Secretary erred in finding that he does not have a severe mental impairment that can be expected to last at least twelve months. This issue was not encompassed in claimant's objection to the magistrate's report and, thus, is waived. See Thomas v. Arn, 474 U.S. 140, 147-48 (1985); Keating v. Secretary of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988) (per curiam). We add that the record portrays a relatively mild mental impairment, which has responded well to medication. Moreover, claimant has never clarified how it allegedly limits his ability to work. In such circumstances, the Secretary could properly conclude that claimant's mental impairment is "non- severe." See 20 C.F.R. Sec. 404.1521 (defining "non-severe" impairment as one that does not significantly limit a claimant's ability to do basic work activities); Rodriguez v. Secretary of Health & Human Servs., 893 F.2d 401, 403-04 (1st Cir. 1989).
 
 
 21
 The judgment of the district court is affirmed.
 
 
 
 [1]
 A C.T. scan of claimant's spine, reported by Dr. Burgos, showed degenerative changes at the lumbo sacral spine with decreased intervertebral disc space at L4-L5 and bulging of the annulus fibrosus at L4-L5. It also revealed segmental calcifications at the outer annulus at the right posterolateral aspect L5-S1, as well as sclerosis and hypertrophic changes at the articular facets at L5-S1 at the right side causing narrowing of the neural foramina
 
 
 [2]
 These regulations were promulgated after the ALJ issued his decision, but while the case was pending before the Appeals Council