958 F.2d 361
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Sixto CARMONA-COTTO, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 91-1776.
 United States Court of Appeals,
First Circuit.
 Filed March 16, 1992
 
 Raymond Rivera Esteves and Juan A. Hernandez Rivera on brief for appellant.
 Daniel F. Lopez Romo, United States Attorney, Jose Vazquez Garcia, Assistant United States Attorney, and Amy S. Knopf, Assistant Regional Counsel, Department of Health and Human Services, on brief for appellee.
 Before Breyer, Chief Judge, Selya and Cyr, Circuit Judges.
 Per Curiam.
 
 
 1
 Sixto Carmona (claimant) appeals from a district court judgment upholding a decision by the Secretary of Human Services to deny his application for Social Security disability benefits. We find substantial evidence in the record in support of the judgment and therefore affirm.
 
 I.
 
 2
 Born in 1929, claimant completed high school and a year and a half of engineering studies at the college level. For nearly twenty years, he worked as a tool and die maker for a machine manufacturer, eventually rising to the level of assistant foreman. Thereafter, he worked for some four years as a mechanic for the New York Transit Authority. On February 22, 1984, while engaged in this latter position, he suffered a fractured big toe and a sprained left ankle. Claimant was able to return to work in May 1984, but stopped working on June 7, 1985 because of alleged pain in his left foot. He filed the instant application for benefits the following year, alleging an inability to work since June 7, 1985 on account of pain in his left foot and ankle, pain in his rib area and back, and hemorrhoids. The administrative law judge (ALJ) held a hearing and issued a decision denying benefits, but the Appeals Council remanded for further consideration of claimant's complaints of pain and possible restrictions on his ability to walk and stand. The ALJ then held a second hearing, at which claimant and a vocational expert (VE) testified, and issued a second
 
 
 3
 decision denying benefits. The Appeals Council this time affirmed, as did the district court (at the recommendation of a magistrate-judge).
 
 II.
 
 4
 The medical evidence can be briefly recounted. Following his February 1984 accident, claimant was treated at a hospital and placed in a cast for six weeks. Between April and July of that year, he received physiotherapy treatment from Dr. Leon Bernstein, an orthopedic surgeon in New York. Dr. Bernstein reported that claimant had suffered an open fracture and crush of the left hallux (big toe) and a sprained contusion of the left ankle. By July, he advised that claimant could return to work so long as no prolonged standing, walking, or lifting was involved. (As mentioned, claimant had actually resumed working two months earlier.)
 
 
 5
 In September 1985, some three months after the alleged onset date, claimant was examined by Dr. Elias Yamil of the Puerto Rico Vocational Rehabilitation program. Claimant complained of recurrent pain in the left ankle and difficulty in walking. Describing his physical condition as satisfactory, Dr. Yamil referred claimant to an orthopedic surgeon and recommended that heavy physical exertion be avoided.
 
 
 6
 Over the next two and one-half years, claimant was examined five times by four orthopedic surgeons. Their evaluations were largely consistent, with one exception. Dr. Carlos Grovas Badrena examined claimant in October 1985. He found that a joint in the big toe had become immobile, but that claimant walked normally, could stand on his heels and tiptoes, and had normal movement without pain in the ankles, knees, hips and back.
 
 
 7
 Dr. Godfred Germansky saw claimant two months later. He reported that claimant had an inflamed toe joint, and also suffered from ankle pain because of his manner of walking. Application of a temporary support was found to eliminate the ankle pain. Dr. Germansky recommended use of a permanent support, but such a device, for unspecified reasons, was never obtained. He also advised claimant that, should the support prove ineffective, a toe operation could be performed which would alleviate any pain and allow him to walk and work without restriction. Again for reasons not apparent from the record, this option was never pursued.
 
 
 8
 In September 1986, claimant was examined by Dr. Arturo Cardilla. Complaints of pain in the left ankle and foot and lower back were recorded. Examination of the ankle and foot showed some limitation of movement and discomfort, but no swelling or deformities. An x-ray of the ankle was negative and revealed an incidental plantar calcaneal spur; an x-ray of the foot revealed that the toe fracture had healed. Dr. Cardilla diagnosed mild left ankle tendonitis, and described the earlier toe fracture as asymptomatic. Examination of claimant's back was neurologically negative apart from some mild discomfort at the L-5 level; movement was normal and paralumbar spasm was absent. An x-ray revealed mild to moderate hypertrophic degenerative changes with early osteoporosis, and Dr. Cadilla diagnosed chronic lumbosacral myositis (muscle inflammation). He recommended that claimant avoid heavy work requiring bending, lifting, squatting, kneeling, or prolonged walking.
 
 
 9
 An examination by Dr. Juan Llompart in November 1987 produced analogous findings. Claimant again complained of pain in the left foot and lower back. While tenderness and limited movement in the big toe were noted, the ankle was without pain or deformity. Movement in both the ankle and foot was unrestricted, and claimant walked normally. Forward flexion of the back was partly limited, and lumbosacral myositis was diagnosed. Echoing several of the other physicians, Dr. Llompart suggested that claimant avoid activities that required squatting, kneeling, or prolonged standing or walking.
 
 
 10
 Dr. Grovas Badrena, following his second examination of claimant in February 1988, proffered the one divergent evaluation. Dr. Grovas found a malunion of the fracture fragments of the big toe, accompanied by post-traumatic degenerative change. Such a condition was "very painful" and precluded the use of a normal shoe. Dr. Grovas strongly recommended that claimant consider surgery. Absent such treatment, Dr. Grovas indicated that claimant could not wear a shoe, was unable to stand or walk for more than thirty minutes each in an eight-hour workday, and was unable to pursue any type of gainful employment.
 
 
 11
 Finally, a residual functional capacity assessment was prepared in October 1986 by a nonexamining physician. Dr. Daniel Nieves indicated that, due to restricted ankle movement, claimant's ability to push or pull foot controls was limited to 50 pounds. Yet claimant was deemed able to stand or walk for six hours in an eight-hour workday, to lift a maximum of 50 pounds (25 pounds frequently), and to balance, stoop, kneel and crouch frequently.
 
 III.
 
 12
 On the basis of such medical evidence,[1] as well as the testimony of claimant and the VE, the ALJ made the following findings. The 1988 evaluation of Dr. Grovas was rejected as being contrary to the weight of the evidence and inconsistent with the ALJ's observations of claimant at the two hearings.[2] Claimant's complaints of pain in his foot, ankle, and back were deemed credible to the extent that his residual functional capacity was reduced to medium exertion.[3] Claimant was found to have the residual functional capacity to perform all work-related activities except for those involving (1) heavy lifting or carrying, or (2) standing or walking for the full eight-hour workday. Relying on the VE's testimony, the ALJ found that these restrictions did not preclude the performance of claimant's past work as a tool and die maker. Benefits were thus denied at step four of the sequential evaluation.
 
 
 13
 Claimant advances two arguments on appeal. He first contends that the ALJ failed to accord proper weight to his subjective complaints of pain in accordance with the criteria enumerated in Avery v. Secretary of Health and Human Services, 797 F.2d 19 (1st Cir. 1986). This argument can be readily dismissed. While the ALJ discounted the severity of the allegations of pain voiced by claimant at the hearings, he did credit those complaints in part. This determination accords with the objective medical findings outlined above. And it is consistent with other facts in the record. For example, claimant stated in a 1986 disability report that he assists with the household chores, including painting and lawn mowing, that he vists friends and relatives, and that he drives a car. At the hearings, claimant indicated that he spent most days helping his father manage a neighborhood store. And claimant has received no ongoing treatment for any of his ailments, and has taken pain medication only in moderate amounts and on a sporadic basis. We think the ALJ adequately surveyed these various factors and reached a supportable determination concerning the limitations imposed by claimant's pain.
 
 
 14
 Claimant's second argument is that the restrictions on his ability to stand or walk preclude performance of his past work or any other gainful employment. A bit of ambiguity attends the record in this regard. The ALJ found that claimant could not stand or walk for a full eight-hour workday, but did not elaborate further. And in his hypothetical to the VE, the ALJ made no specific reference to this limitation; rather, he simply inquired whether claimant could perform has past work as a tool and die maker if he retained the ability to perform medium work (to which the VE responded in the affirmative).[4] Nowhere in the record is it specified how much walking and standing the job of tool and die maker actually entails.[5]
 
 
 15
 Nonetheless, even if some question thereby arises as to claimant's ability to perform his past work, further testimony from the VE provided a solid footing for the ALJ's ultimate
 
 
 16
 decision to deny benefits. The VE stated that claimant had transferable skills that would enable him to perform numerous other jobs in the national economy. Three examples were identified: electric accessories tester, hand coil tapper, and mica inspector. The VE described all three as light jobs that permitted one to alternate positions. This latter feature would appear sufficient to accommodate whatever specific restriction claimant might have in terms of walking and standing. Moreover, the job of mica inspector has recently been reclassified as sedentary in nature, see 2 Dictionary of Occupational Titles 809 (4th ed. 1991)-a designation which involves walking and standing only "occasionally," 20 C.F.R. § 404.1567(a) (1991).
 
 
 17
 Affirmed.
 
 
 
 [1]
 The record also discloses that claimant injured three ribs in May 1987 when his 300-pound nephew fell on him, resulting in a two-day hospital stay. Claimant complained at the hearings of recurrent chest pain and difficulty breathing as a result of this incident. Yet the ALJ discounted these allegations and found no related functional limitations
 
 
 [2]
 The ALJ also noted that Dr. Grovas' assessment was typical of "the type of evaluation that this physician performs for claimants referred to him by [claimant's] attorney."
 
 
 [3]
 The ALJ found that claimant's hemorrhoidal condition was alleviated with nonprescription medication and imposed no ongoing functional restrictions
 
 
 [4]
 Claimant's past job as a mechanic was ruled out, as it is classified as heavy work
 
 
 [5]
 In his 1986 disability report, claimant indicated that his job as mechanic involved four hours of walking and four hours of standing during the normal workday. He did not provide such information with respect to the tool and die position