46 F.3d 1114
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Maria Guilbe SANTIAGO, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 94-1891.
 United States Court of Appeals,
First Circuit.
 Jan. 25, 1995.
 
 Appeal from the United States District Court for the District of Puerto Rico [Hon. Carmen Consuelo Cerezo, U.S. District Judge ]
 Juan A. Hernandez Rivera and Juan R. Requena Davila on brief for appellant.
 Guillermo Gil, United States Attorney, Maria Hortensia Rios, Assistant United States Attorney, and Robert J. Triba, Assistant Regional Counsel, Department of Health and Human Services, on brief for appellee.
 D.Puerto Rico
 AFFIRMED.
 Before TORRUELLA, Chief Judge, BOUDIN and STAHL, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Maria Guilbe-Santiago appeals from a district court judgment affirming the decision of the Secretary of Health and Human Services denying her application for disability insurance benefits. For the following reasons, we affirm.
 
 BACKGROUND
 
 2
 Appellant was born on July 1, 1950 and is a high school graduate.[1] Between September 1982 and February 1991, appellant worked as a school cook. Prior to that, she worked for several years as a flame adjuster at a factory which produced disposable lighters. On February 7, 1990, appellant injured her neck and left shoulder when lifting a heavy cooking pot at work. On June 10, 1991, she filed an application for benefits alleging disability since February 19, 1991 due to frequent pain in her left arm. She complained that the pain, which is "very severe," prevents her from lifting her arm. She also complained of headaches and a nervous condition. The Social Security Administration denied appellant's application initially and on reconsideration.
 
 
 3
 Appellant obtained a hearing before an Administrative Law Judge (ALJ) on November 4, 1992. She testified that she has pain in her neck, swollen cervical muscles, and strong headaches. She also testified that she experiences numbness and cramps in her hands, and that they shake. Pain medication prescribed by the State Insurance Fund (Fund), she stated, alleviated her pain but made her sleepy. A series of injections given by a private physician, one to two weeks before the hearing, reduced inflammation and provided a few hours of relief. With respect to her physical limitations, appellant testified that she cannot lift her arm, "cannot move [her] neck too much," and cannot pull, push or lift things with her hands. However, appellant can sit and walk without limitation. Appellant also testified that she sought mental health treatment because she felt pressure in her chest, could not sleep at night, and became very upset. She stated that medication has alleviated her nervous symptoms.
 
 
 4
 A vocational expert (VE) also testified. He identified appellant's past cooking job as semi-skilled, medium work, and her factory job as unskilled, sedentary work. The ALJ posed a hypothetical to the VE which assumed that appellant has a limited range of motion in her neck or cervical region.[2] The hypothetical also assumed occasional postural limitations, an inability to lift more than twenty pounds [occasionally] and ten pounds frequently, and an inability to do skilled work. The VE concluded that appellant could do her past work as a flame adjuster, although he noted that this type of work is no longer available in Puerto Rico. He also identified several other light, unskilled jobs which appellant could perform in the local economy.
 
 
 5
 The ALJ rejected appellant's allegations of disabling pain, and found that she has occasional mild, cervical discomfort that does not preclude normal sitting and ambulation. He also found that she has a mild anxiety disorder. The ALJ concluded that appellant has the residual functional capacity to perform light, unskilled work. He further concluded that she is not disabled because she can perform her former job as a flame adjuster. The Appeals Council denied review. An appeal was taken to the district court, which concluded that the Secretary's decision is supported by substantial evidence. This appeal followed.
 
 THE MEDICAL EVIDENCE
 
 6
 According to the record, appellant was referred to the Fund on February 9, 1990. She was diagnosed as suffering from cervical and left shoulder sprain and was treated with physical therapy. By July 12, 1990, appellant had improved quite a bit, and physical therapy was discontinued. In February 1991, appellant was seen at the Fund for pain in her left shoulder, upper extremity, and hand. An EMG was positive for C6 radiculopathy and borderline bilateral carpal tunnel syndrome.[3] A CT Scan revealed slight narrowing of the left neural foramina at C6-C7 secondary to mild annular bulge and bony proliferative changes. During the next several months, muscle spasms were noted, as well as inflammation in the left supraclavicular area and restricted motion in the left shoulder and neck. The diagnoses, which varied somewhat, included cervical myofascial pain syndrome, cervicodorsal myositis secondary to C6 radiculopathy, and cervical and left shoulder sprain.[4] Appellant was treated with physical therapy, oral pain medications, trigger point injections, and nerve blocks. Although appellant continued to complain of pain, the record reveals that on April 17, 1991, she was considered to have good potential for recovery. An x-ray of the left shoulder performed on April 26, 1991 was normal. On June 19, 1991, a physiatrist noted that there was continued improvement and that appellant reported a twenty percent decrease in pain. In June and July 1991, appellant was also evaluated for an emotional condition and was diagnosed as suffering from generalized anxiety disorder. She was discharged from the Fund on August 29, 1991 with five percent disability.
 
 
 7
 Appellant began treatment at the Ponce Mental Health Center in October 1991. Her symptoms included irritability, fearfulness, difficulty sleeping, headaches, sensitivity to noise, depression, suicidal ideation, and a tendency to be isolated. Appellant was diagnosed as suffering from adjustment disorder and treated with medication. By November 6, 1991, she reported feeling better. Thereafter, she was seen on roughly a monthly basis. Although at some of her appointments, she reported feeling "so-so," the record reveals that appellant was coherent and oriented. Her memory and intelligence were preserved and her judgment was intact. On May 8, 1992, the last recorded interview, appellant was calm, stable, and with adequate affect. She reported that she felt better and was sleeping well.
 
 
 8
 Dr. Winston Ortiz, a consulting neurologist, examined appellant on two occasions. On August 19, 1991, his examination of appellant's motor system, reflexes, and sensory system was negative. Appellant had a normal gait and was able to bend, stoop, kneel and squat. There were no muscle spasms. Although appellant had some limitation of motion in the cervical region, she had full range of motion in all other areas. A cervical x-ray revealed minimal to moderate anterior spurring from the C3 level to the C6 level, but no other bone or joint pathology. Dr. Ortiz diagnosed cervical strain with no neurological deficits. An examination by Dr. Ortiz on June 15, 1992 did not reveal any deterioration in appellant's physical condition.
 
 
 9
 On September 5, 1991, Dr. Carmen Bird, a non-examining medical consultant, reviewed the medical evidence of record and completed a residual functional capacity assessment. She found occasional postural limitations, but no manipulative, visual, communicative, or environmental limitations. In addition, she found that appellant has an unlimited capacity to push or pull, as well as the capacity to lift twenty pounds occasionally and ten pounds frequently, to stand or sit about six hours out of an eight hour day, and to sit about six hours out of an eight hour day.
 
 
 10
 On June 2, 1992, appellant was seen by Dr. Maria de Los A. Siberon, a private physician. She diagnosed appellant as suffering from cervical strain and prescribed pain medication. Appellant was also seen by Dr. Ismael Jusino McDougall on one occasion in 1992 in connection with shoulder and neck pain. However, the brief entry regarding this visit is largely illegible.
 
 DISCUSSION
 
 11
 Appellant argues that the ALJ did not properly evaluate her allegations of disabling pain. In particular, she contends that he disregarded her subjective complaints of pain, and improperly considered only the objective medical evidence. We disagree. The record includes ample evidence bearing on her subjective complaints, including information about her work history, daily activities, intensity and duration of pain, medications and other treatment, and functional restrictions. The ALJ's decision makes it plain that, in conformance with the regulations and case law, he considered this information. See 20 C.F.R. Sec. 404.1529 (1991); Avery v. Secretary of Health & Human Servs., 797 F.2d 19, 28-29 (1st Cir. 1986). The ALJ found, inter alia, that appellant worked for approximately one year after her injury; that her pain is localized; that she engages in sedentary and light daily activities; that she has only mild limitation of motion in the neck and full range of motion in the back, extremities, and joints; and that she has normal gait without any neurological deficits. He did not reject appellant's pain allegations entirely but determined that she was capable of light work. We are persuaded that this determination is supported by substantial evidence.
 
 
 12
 Appellant also contends that the hypothetical posed to the VE was flawed and did not accurately reflect her pain, mental impairment, and restrictions in the use of her arm and hands. We reject appellant's contention that the hypothetical was inadequate. The hypothetical conveyed in precise terms each of appellant's limitations as found by the ALJ. See Arocho v. Secretary of Health & Human Services, 670 F.2d 374, 375 (1st Cir. 1982). Moreover, the ALJ's findings regarding these limitations are supported by substantial evidence. Id. We have already upheld the ALJ's determination regarding appellant's pain. The evidence of appellant's mental impairment reveals a mild, anxiety disorder that has responded well to medication. Such evidence amply supports the ALJ's conclusion that appellant can perform unskilled work. Finally, there is no functional assessment in the record which supports appellant's allegation of restricted hand and arm use, and the assessment by the Secretary's consulting physician is to the contrary. Under the circumstances, the ALJ could conclude that there was no limitation in appellant's ability to push, pull or lift.
 
 
 13
 Appellant's remaining claims are that the ALJ disregarded evidence from treating sources, relied on isolated statements that ran contrary to the weight of the evidence, failed to consider the combined effect of her impairments, and substituted his own opinion for the medical evidence which tended to show a disability. We have reviewed the medical record and the ALJ's decision and find no such errors. The ALJ was not required to recite every piece of evidence which favored appellant. See Stein v. Sullivan, 966 F.2d 317, 319 (7th Cir. 1992) (noting that the level of articulation required is not precise). His decision reveals that he considered the record as a whole, and that he considered the combined impact of appellant's impairments. See 20 C.F.R. Secs. 404.1520, 404.1523. Appellant's claim that the ALJ "substituted" his own opinion for the medical evidence is without basis.
 
 
 14
 Affirmed.
 
 
 
 [1]
 We base this birth date on appellant's testimony at the administrative hearing, but note that on her application for disability benefits, appellant gave her date of birth as November 6, 1950
 
 
 [2]
 Specifically, the hypothetical assumed that in the cervical region, lateral flexion is limited to thirty-five [out of a possible forty degrees], flexion and extension are limited to twenty-five [out of a possible thirty degrees], and rotation to both the right and left is limited to forty [out of a possible forty-five degrees]
 
 
 [3]
 Radiculopathy is disease of the nerve roots. Dorland's Illustrated Medical Dictionary (Dorland's ) 1626 (28th ed. 1994). Carpal tunnel syndrome is a complex of symptoms resulting from compression of the median nerve in the carpal tunnel, with pain and burning or tingling paresthesias in the fingers and hand, sometimes extending to the elbow. Id. at 1626
 
 
 [4]
 Myofascial Pain Syndrome (or fibromyalgia) is pain in the fibrous tissues, muscles, tendons, ligaments, and other white connective tissues. The Merck Manual 1369 (16th ed. 1992). Myositis is inflammation of a voluntary muscle. Dorland's at 1095. A sprain is a joint injury in which some of the fibers of a supporting ligament are ruptured but the continuity of the ligament remains intact. Id. at 1566