Melanson v. SSA                    CV-96-31-JD    10/21/96

UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE


Orman Melanson

        v.                                  Civil No. 96-31-JD

Commissioner, Social
Security Administration


                          O R D E R


     The plaintiff, Orman Melanson, brings this action pursuant

to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g),

seeking review of a final decision of the defendant, Commissioner

of the Social Security Administration ("Commissioner"), denying

his claim for benefits under the Act.  Before the court are the

plaintiff's motion for an order reversing or remanding the

Commissioner's decision (document no. 7) and the defendant's

motion for an order affirming the Commissioner's decision

(document no. 9).



                         Background

     Pursuant to Local Rule 9.1, the parties have filed the

following joint statement of material facts, which the court

incorporates verbatim:

     Plaintiff filed an application for disability insurance
benefits on January 8, 1993, alleging an inability to work due to
a back impairment, high blood pressure and ulcers (Tr. at 50-52,
81).  Plaintiff has a general equivalency diploma and past work

experience as a service writer and a service manager at automobile dealerships (Tr. at 85).

Medical Evidence

The medical evidence dated prior to the plaintiff's alleged onset date in November 1989 shows that he was treated for peptic ulcer disease (Tr. at 113-115). Additionally, the record also indicates that the plaintiff was involved in an automobile accident in 1983 which injured his back (Tr. at 153). Apparently, the plaintiff reinjured his back in 1986 after falling down some stairs. Id. He was hospitalized in 1986 for same and underwent a laminectomy at L-4, S-1 (Tr. at 153-156).

At this time, in July 1992, the plaintiff was complaining of chest pain and shortness of breath and arthritic joint pains. (Tr. at 116-117). Christopher J. Harris, M.D., performed a physical examination which was unremarkable and diagnosed the plaintiff with chest pain, rule/out cardiac ischemia (Tr. at 116). A cardiac catheterization, performed later that month, was normal (Tr. at 118-122).

In November 1992, an X-ray of the plaintiff's chest found no acute cardiopulmonary disease (Tr. at 123). Also, in November 1992, after experiencing pain in his right upper quadrant following meals for some time, the plaintiff was admitted to Anna Jaques Hospital for an elective cholecystectomy[1] (Tr. at 124-152). The plaintiff experienced complications of urine retention and post-operative ileus, but these were remedied and the plaintiff was discharged on December 6, 1992.

On January 28, 1993, Christopher J. Harris, M.D., completed questionnaires concerning the plaintiff's disc disease, hypertension, arthritis, and ulcer (Tr. at 166-171). Dr. Harris stated that he had first examined the plaintiff in December 1983 and that he had most recently examined the plaintiff in November 1992 (Tr. at 166). Dr. Harris noted that the plaintiff's hypertension[2] was being treated and that the plaintiff did not

---

[1]Cholecystectomy - surgical removal of the gallbladder. Dorland's Illustrated Medical Dictionary (Dorland's), 28th ed. at p. 316.

[2]Hypertension - High arterial blood pressure. Id. at p. 801.

2

have any end-organ involvement (Tr. at 167, 170). Additionally, Dr. Harris found that the plaintiff's prognosis with regard to his ulcer was good (Tr. at 171). As for the plaintiff's arthritis, Dr. Harris referred all inquires to Dr. Lipman (Tr. at 168).

Walter L. Lipman, M.D., provided a letter dated January 30, 1993 (Tr. at 163). In this letter, Dr. Lipman states that he first saw the plaintiff in 1983 for back pain and that the plaintiff eventually underwent surgery to repair his back. According to Dr. Lipman, the plaintiff did "fairly well" after the surgery, experiencing minimal discomfort with light to medium duty activities. However, he was not and has never been in a position to return to his past work because it involves awkward positions and pushing and pulling (Tr. at 163). Nevertheless, Dr. Lipman opined that the plaintiff could ambulate easily, sit for significant periods of time, and do most light activities without any difficulty (Tr. at 163).

On February 25, 1993, Dr. Jack N. Meltzer examined the plaintiff at the request of the Disability Determinations Services (DDS)(Tr. at 153-160). Upon examination, Dr. Meltzer found paravertebral[3] tenderness in the lumbosacral[4] spine, and that the plaintiff's blood pressure was 120/80, his lungs were clear, and his heart rhythm was normal (Tr. at 155). Additionally, the plaintiff's abdomen was soft, with no masses, tenderness, or organomegaly[5]. Further, the plaintiff's gait was normal, his pulses and reflexes were intact, and he had no specific motor or sensory deficits (Tr. at 155). Finally, Dr. Meltzer ordered a chest x-ray which was normal and an electro-cardiogram which showed minor nonspecific T wave abnormalities, and a lumbosacral X-ray which found mild to moderate narrowing

---

[3]Paravertebral - Beside the vertebral column. Id. at p. 1233.

[4]Lumbosacral - pertaining to the loins and the sacrum, the triangular bone just below the lumbar vertebrae. Id. at pp. 962, 1479.

[5]Organomegaly - enlargement of any large organ in any one of the three great cavities of the body. Dorland's at pp. 1190, 1831-1832.

3

between L4 and L5, and grade I spondylolisthesis[6] at L5-S1 (Tr. at 158-160). Dr. Meltzer diagnosed chronic low back syndrome, with previous laminectomy and fusion, with chronic pain and evidence of narrowing L4-5 with Grade I spondylolisthesis, by X-ray; essential hypertension, in good control, without evidence of target organ involvement; and a past history of ulcers, currently without evidence of active ulcer disease (Tr. at 156).

In July 1993, Dr. Lipman referred to a CT scan of the plaintiff's back which reportedly showed some spurring at L5-S1 on the right (Tr. at 164). Further, in August 1993, Dr. Lipman wrote a letter opining that the plaintiff was permanently disabled from his routine employment (Tr. at 175). Also, in August 1993, Dr. Harris completed two more questionnaires regarding the plaintiff's hypertension and ulcers (Tr. at 172-173). According to Dr. Harris, the plaintiff's prognosis was good for both of these conditions.

Progress notes from the New Hampshire Department of Corrections show that the plaintiff's condition remained essentially stable from November 1993 until the time of the hearing in January 1995. The plaintiff's motor power and sensation were normal at examinations in November 1993 and May 1994 (Tr. at 190-192). An EKG from November 1993 was within normal limits and a May 1993 X-ray of the plaintiff's lumbar spine found changes from the lumbosacral fusion, disc space narrowing at L4-5 and prominent disc space narrowing at L5-S1 where there is slight anterolisthesis of L5 on S1 (Tr. at 189, 199-200).

During this period the plaintiff continued to take Procardia[7] and Zantac[8], although Tylenol was substituted for Naprosyn (Tr. at 178, 182-183). He also was found able to perform light duty work with no heavy lifting (Tr. at 187-188, 224).

---

[6]Spondylolisthesis - forward displacement of one vertebra over another, usually of the fifth lumbar over the body of the sacrum or of the fourth lumbar over the fifth. Id. at p. 1563.

[7]Procardia - indicated in the management of angina. Physicians' Desk Reference (PDR), 49th ed. at p. 1906.

[8]Zantac - indicated in the treatment of gastric ulcers. PDR at p. 1109.

4

On December 31, 1994, Dr. Lipman completed a medical report and a physical assessment of the plaintiff (Tr. at 215-223). The medical report stated that he had treated the plaintiff for ten years on a sporadic basis (Tr. at 215). According to Dr. Lipman, the plaintiff had some tenderness over his right sacroiliac[9] joint region and some discomfort with range of motion. However, he had a complete range of motion in his back and no sensory, motor or reflex deficits (Tr. at 216). Dr. Lipman noted that a lumbar CT from July 21, 1993 showed an osteophytic spur in the right L5-S1 neuroforamen[10] which might have been irritating the right L5 nerve root; advanced disc disease at L5-S1, and disc bulging at L3-4 and L4-5, but there was no obvious disc herniation; an October 1993 bone scan was normal (Tr. at 217). He diagnosed the plaintiff with lumbosacral fusion L4 to S1 with right lumbar radiculopathy[11] and noted that he was being treated with anti-inflammatories (Tr. at 218). Plaintiff was told to limit his activities and not to do frequent bending, prolonged sitting or standing, and no heavy lifting.

As for the plaintiff's physical abilities, Dr. Lipman opined that he could lift and carry 20 pounds occasionally and 5 pounds frequently, and sit, stand or walk, each for 2 hours per day without interruption up to a total of 4 hours each day (Tr. at 219-220). Additionally, Dr. Lipman found that the plaintiff could occasionally stoop, crouch, and kneel, but could never climb, balance, or crawl (Tr. at 221). Further, Dr. Lipman opined that the plaintiff's ability to push and pull was affected, and he should avoid heights, moving machinery, extreme temperatures and humidity, and vibration (Tr. at 221-222).

---

[9]Sacroiliac - pertaining to the sacrum and the ilium; denoting the joint or articulation between the sacrum and the ilium and the ligaments associated therewith. Dorland's at p. 1479.

[10]Neuroforamen - an intervertebral foramen, the passage formed by the inferior and superior notches on the pedicles of adjacent vertebrae; it transmits a spinal nerve and vessels. Id. at p. 649.

[11]Radiculopathy - a disease of the nerve roots. Id. at p. 1404.

5

## Hearing Testimony

The plaintiff appeared with his attorney at the ALJ hearing on January 23, 1995. At the hearing, the plaintiff testified that he had received a GED while serving in the Air Force (Tr. at 27-28). Additionally, the plaintiff testified that he had worked as an automobile service manager and an automobile service writer.

Plaintiff stated that his work as a service manager was comprised of diagnosing problems, road testing cars, assisting the mechanics, including installing engines, and assigning work (Tr. at 34). He stated that this job involved lifting 50 to 75 pounds, crawling, bending, and prolonged walking and standing (Tr. at 34-35). As for the plaintiff's service writer job, he testified that this involved supervising mechanics, talking to the customers, road testing the vehicles, sometimes helping the mechanics, doing the payroll, and dealing with the manufacturer on warranty claims (Tr. at 29). According to the plaintiff, he could no longer perform these jobs because of his back pain which is caused by sitting for long period, bending, and lifting (Tr. at 30).

Plaintiff testified that he takes Procardia for hypertension, which is now under control (Tr. at 31). Additionally, the plaintiff stated that he takes Tagament which effectively controls his ulcers (Tr. at 31-32). For his back pain, the plaintiff explained that he takes Tylenol (Tr. at 32). According to the plaintiff, his back pain is constant and an eight on a scale of one to ten (Tr. at 37). Plaintiff testified that he can sit for 25 minutes without pain and stand for 20 to 30 minutes (Tr. at 36-37). He admitted that he can lift and carry 25 pounds, and that he can bend, crawl and climb stairs (Tr. at 38-39).

## Discussion

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a

rehearing." In reviewing a Social Security disability decision, the factual findings of the Commissioner "shall be conclusive if supported by `substantial evidence.'" Irlanda Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting 42 U.S.C. § 405(g)).[12] The court "`must uphold the [Commissioner's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusion.'" Id. (quoting Rodriguez v. Secretary of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)); accord Richardson v. Perales, 402 U.S. 389, 401 (1971). The record must be viewed as a whole to determine whether the decision is supported by substantial evidence. Frustaglia v. Secretary of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Rodriguez, 647 F.2d at 222. Moreover, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is

---

[12]Substantial evidence is "`such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (citing Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

for the [Commissioner], not the courts." Irlanda Ortiz, 955 F.2d at 769 (citing Rodriguez, 647 F.2d at 222); see also Burgos Lopez v. Secretary of Health & Human Servs., 747 F.2d 37, 40 (1st Cir. 1984).

The ALJ is required to consider the subjective complaints of pain or other symptoms by a claimant who presents a "clinically determinable medical impairment that can reasonably be expected to produce the pain alleged." Avery v. Secretary of Health & Human Servs., 797 F.2d 19, 21 (1st Cir. 1986); accord 42 U.S.C.A. § 423(d)(5)(A) (West Supp. 1996); 20 C.F.R. § 404.1529 (1996). "[C]omplaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings." Dupuis v. Secretary of Health & Human Servs., 869 F.2d 622, 623 (1st Cir. 1989); see Bianchi v. Secretary of Health & Human Servs., 764 F.2d 44, 45 (1st Cir. 1985) ("The [Commissioner] is not required to take the claimant's assertions of pain at face value.") (quoting Burgos Lopez v. Secretary of Health & Human Servs., 747 F.2d 37, 40 (1st Cir. 1984)). Once a medically determinable impairment is documented, the effects of pain must be considered at each step of the sequential evaluation process. 20 C.F.R. § 404.1529(d) (1996). A claimant's medical history and the objective medical evidence are considered reliable indicators from which the ALJ may draw reasonable conclusions regarding the

8

intensity and persistence of the claimant's pain. Avery, 797 F.2d at 23; 20 C.F.R. § 404.1529(c)(3) (1996). However, situations exist in which the reported symptoms of pain suggest greater functional restrictions than can be demonstrated by the medical evidence alone. Id.

When a claimant complains that pain or other subjective symptoms are a significant factor limiting his ability to work and those complaints are not fully supported by medical evidence contained in the record, the ALJ must undertake further exploration of other information. Avery, 797 F.2d at 23. The ALJ must consider the claimants's prior work record; daily activities; location, duration, frequency and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness and side effects of any medication taken to alleviate pain or other symptoms, past or present; treatment, other than medication, received for relief of pain or other symptoms, past or present; any measures used, past or present, to relieve pain or other symptoms; and other factors concerning functional limitations and restrictions due to pain. 20 C.F.R. § 404.1529(c)(3) (1996); Avery, 797 F.2d at 23; S.S.R. 88-13. Moreover, when assessing credibility the ALJ may draw an inference that the claimant would have sought additional treatment if the pain was as intense as alleged. See Irlanda Ortiz, 955 F.2d at 769. If the complaints

9

of pain are found to be credible under the criteria, the pain will be determined to diminish the claimant's capacity to work. 42 U.S.C.A. § 423(d) (West Supp. 1996); 20 C.F.R. § 404.1529(c)(4) (1996). Finally, the court gives deference to credibility determinations made by the ALJ, particularly where the determinations are supported by specific findings. Frustaglia, 829 F.2d at 195 (citing DaRosa v. Secretary of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1985)).

In order to trigger the ALJ's duty to make specific findings of fact as to the physical and mental demands of past relevant work, a claimant must "lay the foundation as to what activities [his] former work entailed [and] must point out (unless obvious) . . . how [his] functional incapacity renders [him] unable to perform [his] former usual work." Curtis v. Sullivan, 808 F. Supp. 917, 923 (D.N.H. 1992) (quoting Santiago v. Secretary of Health & Human Servs., 944 F.2d 1, 5 (1st Cir. 1991)). A claimant's past relevant work is considered not only as the claimant actually performed it, but as it is performed in the national economy. Parizo v. Secretary of Health & Human Servs., No. 92-514-M, slip op. at 6 (D.N.H. March 29, 1994) (citing Santiago, 944 F.2d at 5; 20 C.F.R. § 404.1520(e); S.S.R. 82-62).

In this case, the administrative law judge ("ALJ") denied the plaintiff's claim for benefits after finding that the

10

plaintiff was able to do his past relevant work as a service writer and that the plaintiff could perform "the full ranges of light and sedentary work activities." Tr. at 16. The plaintiff argues that the Commissioner's decision was not supported by substantial evidence in the record and that the Commissioner committed errors of law in the decision. To support this claim, the plaintiff contends that (1) the ALJ's finding that the plaintiff's subjective complaints of pain lacked credibility was not justified; and (2) the ALJ's conclusion concerning his ability to perform past relevant work as a service writer was flawed because the ALJ made a distinction between the duties of a service manager and a service writer that was not supported by the record. The court considers these arguments <u>seriatim</u>.

I.   <u>ALJ's Evaluation of Plaintiff's Subjective Complaints of Pain</u>

The plaintiff asserts that the ALJ failed to consider properly the limitations on the plaintiff caused by pain when he found that the plaintiff was capable of performing work requiring a light level of exertion. In support, the plaintiff states that "Regulation 404.1529 in substance provides that symptoms of pain, if consistent with medical signs and findings that show existence [sic] of a medical condition that could reasonably be expected to produce pain, are disabling under the law." Plaintiff's

11

Memorandum and Brief in Support of Order Reversing or Remanding the Decision of the Commissioner ("Plaintiff's Memo") at 6. This is simply incorrect. The regulation actually provides

> statements about your pain or other symptoms <u>will not alone establish that you are disabled</u>; there must be medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, <u>when considered with all of the other evidence</u> (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled. In evaluating the intensity and persistence of your symptoms, including pain, <u>we will consider all of the available evidence</u>, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you.

20 C.F.R. § 404.1529(a) (1996) (emphasis supplied). Subjective complaints of pain are only one factor among many that the ALJ must consider and are not, as the plaintiff would have it, the determining factor in this calculus. See 42 U.S.C.A. § 423(d)(5)(B) (West Supp. 1996).

The record shows that the ALJ considered the plaintiff's subjective complaints as required, but found them to be less than fully credible. Tr. at 16-17. He questioned the plaintiff, as required by Avery, about the following factors: prior work record, Tr. at 40-41; daily activities, Tr. 36-45; location, duration, frequency and intensity of pain, Tr. at 36-40; precipitating and aggravating factors, Tr. at 36-43; type,

12

dosage, effectiveness and side effects of medication, Tr. at 31-32; treatment other than medication, Tr. at 43-44; and, measures used to relieve pain or other symptoms, Tr. at 32, 36-43. The ALJ considered the plaintiff's answers in light of the medical evidence in the record, which provided support for the ALJ's conclusion, as illustrated in the following summary.

In 1993, Dr. Lipman opined that the plaintiff could ambulate easily, sit for significant periods of time, and do most light activities without any difficulty. Tr. at 163. In December, 1994, Dr. Lipman reported that the plaintiff had a complete range of motion in his back and no sensory, motor, or reflex deficits. Tr. at 216. Dr. Lipman told the plaintiff to limit his activities and not to do frequent bending, prolonged sitting or standing, or heavy lifting. Tr. at 218. As for the plaintiff's physical abilities, Dr. Lipman opined that he could lift and carry twenty pounds occasionally and five pounds frequently, and sit, stand or walk, each for two hours per day without interruption up to a total of four hours each day. Tr. at 219-20. Additionally, Dr. Lipman found that the plaintiff could occasionally stoop, crouch, and kneel. Tr. at 221.

Other doctors also provided medical opinions as to the plaintiff's condition. In February, 1993, Dr. Meltzer examined the plaintiff but did not note that he had any functional

13

restrictions that would prevent him from performing his past work.  Tr. at 161.  In November, 1993, the New Hampshire Department of Corrections found that the plaintiff was able to perform light duty work with no heavy lifting.  Tr. at 187-88.  In September, 1993, two physicians prepared a Disability Determination in which they also concluded that the plaintiff could perform light work.  Tr. at 56-63.

After having an opportunity to assess the plaintiff's demeanor and weigh the medical evidence, the ALJ concluded that his subjective complaints of pain were not credible.  Tr. at 17.  The ALJ found that plaintiff did suffer from pain, but the pain was not severe enough to disable him completely.  Tr. at 16.  This conclusion was supported by substantial evidence.  That the ALJ might have reached a different conclusion is not grounds for reversal.  See, e.g., Irlanda Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

## II.  ALJ's Conclusions Concerning Plaintiff's Past Relevant Work

In an effort to undermine the ALJ's conclusion that the plaintiff could perform past relevant work as a service writer, the plaintiff claims that the distinction between the job of service manager and the job of service writer drawn by the ALJ was not supported by the record.  However, there was substantial

14

evidence for the ALJ to conclude that the requirements of the job of service manager and service writer were different.  See Tr. at 29-30 (plaintiff discussing "lesser jobs as a service writer" as compared to service manager).  The ALJ was entitled to consider the plaintiff's past work experience as the plainitff performed it as well as how it is performed in the national economy, as indicated in the Dictionary of Occupational Titles ("DOT"), U.S. Department of Labor (4th ed. rev. 1991).  See Santiago v. Secretary of Health & Human Servs., 944 F.2d 1, 5 & n.1 (1st Cir. 1991); Parizo v. Secretary of Health & Human Servs., No. 92-514-M, slip op. at 6 (D.N.H. March 29, 1994).

The DOT contains separate entries, in different occupational categories, for the positions of automobile service manager and automobile service writer.  See DOT 185.167-058 (service manager), 620.261-018 (service writer, sub-listing of automobile-repair-service estimator).  The occupation of service writer requires a light level of exertion.  See Tr. at 17; DOT 620.261-018.  The ALJ found that the plaintiff had the residual functional capacity to perform light work, and the court finds that the ALJ's conclusion was supported by substantial evidence.[13]  Because there is substantial evidence in the record

---

[13]The evidence upon which the ALJ concluded that the plaintiff's assertion that he was totally disabled by pain was not fully credible, summarized infra in Part I, also provides a

15

indicating that the plaintiff had the residual functional capacity to perform light work and because the job of service writer only requires light exertion, the ALJ was entitled to conclude that the plaintiff could perform his past relevant work as a service writer and thus was not disabled under the meaning of the Social Security Act.

## Conclusion

The plaintiff's motion for an order reversing or remanding the Commissioner's decision (document no. 7) is denied. The defendant's motion for an order affirming the Commissioner's decision (document no. 9) is granted. The clerk is ordered to close the case

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

October 21, 1996

cc:  David L. Broderick, Esquire
     Edmund P. Hurley, Esquire

_____

substantial basis for the conclusion that he was capable of performing light work.

16