Thompson v. SSA                           CV-97-145-SD 04/09/98

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Charles Thompson

        v.                                  Civil No. 97-145-SD

Kenneth S. Apfel, Commissioner,
 Social Security Administration


O R D E R


        Plaintiff Charles Thompson brings this action pursuant to
the Social Security Act (Act), 42 U.S.C. § 405(g), seeking review
of a final decision by defendant Social Security Administration
denying his claim for benefits under the Act.  Before the court
is plaintiff's motion to reverse the Commissioner's decision[1] on
grounds that (1) the Administrative Law Judge (ALJ) should not
have used Grid § 201.23 because his subjective complaints of pain
were not properly considered under the standards of Avery v.
Secretary of Health and Human Servs., 797 F.2d 19 (1st Cir.
1986), (2) the use of pain medication to ease his pain and his
illiteracy eroded his vocational base, and (3) his physicians'
opinions were not given the proper weight.  The government has
moved to affirm the Commissioner's decision.

_____

        [1]Plaintiff's memorandum supporting his motion for reversal
of the Commissioner's decision exceeded the 25-page limit in
Local Rule 7.1(a)(3).  Plaintiff failed to request leave of the
court for exceeding the maximum page limit.  The court considers
plaintiff's memorandum, but does not look favorably upon his
disregard for the local rules of court.

Pursuant to Local Rule 9.1, the parties have filed a joint statement of material facts, a copy of which is attached herewith (Attachment).

Discussion

## 1.  Standard of Review

In this case, the Commissioner found plaintiff Charles Thompson not disabled as defined under the Act.  After a final determination by the Commissioner and upon request by a party, this court has the authority to review the pleadings and the record of the proceeding, and to enter a judgment affirming, modifying, or reversing the Commissioner's decision.  42 U.S.C. § 405(g) (1994).  The jurisdiction of the district court in reviewing a final adverse decision is limited to determining whether the administrative findings are supported by substantial evidence in the record.  Bourque v. Secretary of Health & Human Servs., No. CV-93-248-L slip op. at 8 (D.N.H. Nov. 8, 1993) (citing Gray v. Matthews, 421 F. Supp. 364 (D.C. Cal. 1976)).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence is "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not

prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966) (quoting NLRB v. Nevada Consolidated Copper Corp., 316 U.S. 105, 106 (1942)). A denial of social security disability benefits should be upheld unless it is clear that "the Commissioner has committed a legal or factual error in evaluating a particular claim." Manso-Pizarro v. Secretary of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

## 2. Determination of Disability

Disability is the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A) (West Supp. 1997). A claimant is disabled under the Act if his "physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [he] lives or whether a specific job vacancy exists for him or whether [he] would be hired if [he] applied for work." 42

3

U.S.C. § 423(d)(2)(A) (1994). The ALJ is required to employ the following five steps in sequence when analyzing a disability claim:

1) whether the claimant is engaged in substantial gainful activity;

2) whether the claimant has a severe impairment;

3) whether the impairment meets or equals a listed impairment described in Appendix 1;

4) whether the claimant has sufficient residual functional capacity which is defined as what an individual can do despite limitations in performing [his] past work; and

5) whether the impairment prevents the claimant from doing any other gainful and substantial work within the economy based upon [his] age, education, work experience and residual functional capacity. See 20 C.F.R. § 404.1520 (1997).

If the claimant is engaged in substantial gainful activity, his claim will be denied at the first step. However, if not, the ALJ must decide whether his impairment is severe. If the claimant's medical condition is severe, his claim will proceed to Step 3. A claimant's claim must be approved if his impairment either meets or equals one listed in Appendix 1. If his impairment does not, his claim for disability proceeds to Step 4. If the claimant can perform his past work, his claim is denied. If he is unable to perform his past employment, the Commissioner

4

must determine, based upon his age, education, past work experience, and residual functional capacity, whether he can perform other work that exists in substantial numbers in the national economy. A claimant will be considered disabled and eligible for benefits if based on the above factors of age, education, and work experience he could not perform work that exists in the national economy. 2 BARBARA SAMUELS, SOCIAL SECURITY DISABILITY CLAIMS PRACTICE AND PROCEDURE § 22:8 (2d ed. 1994).

At the fifth step, the Grid at 20 C.F.R. § 404, Subpart P, Appendix 2, 200.00(a)-(e) (1997) simplifies the Commissioner's task of determining whether claimants can perform work that exists in the national economy enabling "the [Commissioner] to satisfy [the] burden in a 'streamlined' fashion without resorting to 'the live testimony of vocational experts.'" Ortiz v. Secretary of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (quoting, Sherwin v. Secretary of Health & Human Servs., 685 F.2d 1, 4 (1st Cir. 1982)). The Grid, which is a matrix combining different permutations of four essential factors set forth in the statute; i.e., age, education, work experience, and residual work capacity, applies to claimants who have only exertional limitations.[2] Sherwin, supra, 685 F.2d at 3. The

---

[2]Exertional impairments limit an individual's ability to do work that requires lifting, walking, and standing. The C.F.R. classifies jobs as sedentary, light, medium, heavy, and very heavy. See C.F.R. § 404.1567. The Grid applies to individuals

Grid states as to each factor combination, whether a claimant is "disabled" or "not disabled." Id. If a claimant's characteristics such as vocational factors or residual functional capacity are not contemplated by the Grid and are not identical to any rule, the Grid does not apply, but may be used as a guide. 20 C.F.R. §§ 404.1569, 416.969 (1997). The Commissioner must rely on the Grid unless a claimant has a nonexertional impairment that significantly reduces the range of jobs he might otherwise be able to perform. Burgos Lopez v. Secretary of Health and Human Servs., 747 F.2d 37, 41 (1st Cir. 1984). However, if only nonexertional limitations exist, then the Grid rules cannot be applied, and independent vocational testimony may be required instead. See Sanders v. Sullivan, 983 F.2d 822 (8th Cir. 1992). Reliance on the Grid is appropriate where a nonexertional limitation does not impose a significant restriction on the range of work that a claimant is able to perform. Ortiz, supra, 890

---

whose exertional impairments limit them to sedentary, light, or medium work. A nonexertional impairment is a symptom which arises in the absence of physical activity and includes limitations that affect: mental activity, such as thinking, relating, following instructions, accepting supervision, getting along with co-workers; sensory experiences, such as seeing, hearing; communication, such as speaking; postural, such as ability to stand, sit, walk with normal gait, bend, stoop; and manipulative skills, such as the ability to use one's fingers and hands to maneuver objects. Further, if pain is triggered by physical activity, it is considered an exertional impairment. If a symptom such as pain is not related to exertion, but arises in absence of physical activity, then it is considered a nonexertional limitation. 2 SAMUELS, supra, §22:29.

6

F.2d at 524.  The more the occupational base is reduced by a nonexertional impairment, the less applicable the Grid rules become.  Id.

3. Commissioner's Decision

In this case, the ALJ found that Mr. Thompson had not engaged in substantial gainful activity since July 4, 1994.  The ALJ further found that the medical evidence established that Mr. Thompson's degenerative disc disease qualified as a severe impairment which significantly interfered with his ability to perform basic work activities, but was not an impairment which met or equaled the severity of any impairment listed in or medically equivalent to one listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (1997).  The ALJ also determined that Mr. Thompson could not perform his previous work responsibilities as a general maintenance man and automobile mechanic because of the amount of lifting, bending, carrying, standing, and walking involved.  However, the ALJ found that Mr. Thompson had the residual functional capacity to perform the physical exertion and nonexertional requirements to work except for lifting and carrying over 10 pounds and work which required prolonged periods of walking and standing.  See 20 C.F.R. §§ 404.1545, 416.945 (1997).  Court Transcript (Tr.) 73.

The ALJ decided that Mr. Thompson's complaints of severe pain were not credible and did not further limit his functional capacity. Mr. Thompson's physicians and the independent physician's assessment of his injury actually stated that he could perform light work. The ALJ gave Mr. Thompson the benefit of the doubt by balancing his complaints of pain with the physicians' assessments to determine that he could perform a full range of sedentary work.[3]

Since Mr. Thompson established that he can no longer perform the duties of his past relevant work, the Commissioner had the burden to determine if there were jobs in the national and regional economy that Mr. Thompson could perform which were consistent with his vocational factors and residual functional capacity. Mr. Thompson's nonexertional limitations were not significant enough to make the Grid inapplicable. Therefore the ALJ determined that the Grid mandated a finding that Mr. Thompson was not disabled. See 20 C.F.R. § 404, Subpart P, Appendix 2, 201.23 (1997). The ALJ determined that Mr. Thompson was not disabled within the meaning of the Act because he retained the

---

[3]Sedentary work is defined as that work which involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (1997).

ability to perform sedentary work which exists in significant numbers in the national economy.

Mr. Thompson contends that the ALJ improperly relied on the Grid because he failed to consider his subjective complaints of pain which, according to Thomson, precludes him from performing a full range of sedentary work.[4] The ALJ is required to consider subjective complaints of pain or other symptoms made by a claimant who presents a clinically determinable medical impairment that can be reasonably expected to produce the alleged pain. According to Avery, the ALJ must consider the following factors: 1) the nature, location, onset, duration, frequency, radiation, and intensity of pain; 2) any precipitating or aggravating factors; 3) the type dosage, effectiveness, and adverse side-effects of any pain medication; 4) any treatment, other than medication, for the relief of pain; 5) any functional restrictions; and 6) the claimant's daily activities. Avery, supra, 797 F.2d at 29. When the ALJ is assessing the credibility of the claimant's pain, he may draw an inference that the claimant would have sought additional treatment if the pain was as intense as claimant alleges. Id. Credible complaints of pain

---

[4]Thomson also contends that his illiteracy further limits the work available to him. This argument, however, is specious because the ALJ relied on the Grid Rule 201.23, which is the rule that applies to younger individuals who are illiterate and able to perform sedentary activity.

may be determined to diminish a claimant's capacity to work. Id.; see 42 U.S.C. § 423(d) (West Supp. 1997); 20 C.F.R. § 404.1529(c)(4) (1997).

The evaluation of subjective complaints of pain calls for a determination on the credibility of the claimant's testimony and objective findings. See Frustaglia v. Secretary of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987). In this case, Mr. Thompson was asked about the nature, location, onset, duration, frequency, radiation, and intensity of his back pain. He replied that the pain was in his lower back and that it was sharp and constant. He rated the pain a ten on a scale of one to ten in intensity, and said it radiated down his right and left legs, causing them to go numb. Tr. 102-103. Mr. Thompson further stated that the weather and activities such as bending, lifting, driving, sitting, or standing for long periods caused pain to his back. Tr. 101, 103-104. He also testified that he was on Flexeril and Percocet, which he took for pain when it caused him to awaken in the night. Tr. 102-103.

The ALJ found "that the claimant does not credibly experience pain at a level that would further reduce his functional capacity." Tr. 71. The ALJ found Mr. Thompson's complaints of pain inconsistent with such daily activities as taking and picking up his son from school, cooking, sweeping the floor, grocery shopping, socializing with friends, and fishing.

10

Tr. 70-71, 101-02, 148-150.  The ALJ also noted that Mr. Thompson rejected Dr. Rudins' suggestion that surgery may be an option, and originally refused physical therapy.  Tr. 122.  Both Dr. Levy and Dr. Rudins suggested epidural injections to help control the pain, yet Mr. Thompson refused such measures.  Tr. 178, 180, 182.

Mr. Thompson further argues that the ALJ's finding of no disability was not supported by substantial evidence because the reports by Dr. Rudins and Dr. Clark were not given proper weight. The court, however, finds this argument meritless.  According to Dr. Rudins, Mr. Thompson could lift about 20 pounds, but should avoid extensive bending, twisting, or frequent lifting. Tr. 183. Dr. Rudins' reports all support the ALJ's determination that Mr. Thompson could perform sedentary activity.  In his notes Dr. Rudins opined "from a purely medical standpoint he does have a sedentary to light duty capacity . . . ."  Tr. 184.  In a later assessment Dr. Rudins stated that "although I believe he does have a light duty to sedentary work capacity, he basically is disabled from any type of gainful employment, when considering his education, training, and work experience."  Tr. at 187. While Dr. Rudins is certainly qualified to assess Thompson's physical capacity, the determination of disability under the Social Security Act is a legal determination for the ALJ.  In fact, given the doctor's opinion that Thompson could perform

11

sedentary work, the applicable law requires a finding of no disability.

## 5. Evidence Submitted After ALJ's Decision

Mr. Thompson argues that Dr. Clark's report supported a finding of disability and was not allowed to be put into evidence and given its proper weight. However, Dr. Clark's opinion about Mr. Thompson's pain and disability came after the ALJ heard and decided the case. Tr. 7-8. Under 42 U.S.C. § 405(g), a court may at any time order additional evidence to be taken before the Commissioner, but only upon a showing that there is new material evidence and that there is good cause for the failure to incorporate the evidence into the record of the prior proceeding. 42 U.S.C. § 405(g) (1994). In the First Circuit, a district court must find that the evidence is "new" and "material" and that "good cause" exists for the failure to seasonably offer the evidence. Evangelista v. Secretary of Health & Human Servs., 826 F.2d 136, 139-40 (1st Cir. 1987). The question in this case is not whether the additional evidence by Dr. Clark was new or that good cause existed for not seasonably offering it to the ALJ, because the surgery did not take place until after the ALJ's decision, but whether Dr. Clark's opinion was material.

To decide whether evidence is material, the court must ask if the ALJ's decision "might reasonably have been different" if

12

he had the opportunity to consider the evidence. <u>Falu v. Secretary of Health & Human Servs.</u>, 703 F.2d 24, 27 (1st Cir. 1983). The reports of Dr. Clark do not differ significantly from the other medical reports before the ALJ. When Mr. Thompson first saw Dr. Clark, he was only taking over-the-counter Tylenol and no other pain medications. Tr. 7. Dr. Clark suggested epidural steroids and physical therapy. Tr. 8. Dr. Clark also suggested to Mr. Thompson that using his old back brace might help subside the pain. Tr. 11. Surgery was discussed on September 4, 1996, and performed on October 30, 1996. Tr. 13, 20-21. According to a November 18, 1996, report by Dr. Clark, Mr. Thompson's neurologic exam was normal, and he did not see anything wrong which would cause back spasms and numbness and tingling down Mr. Thompson's left leg. Tr. 17. Everything still looked normal on November 26, 1996, even though Mr. Thompson still complained of back pain. Therefore, even in light of the additional evidence, the finding of the Commissioner that Mr. Thompson was not disabled as defined under the Act was supported by substantial evidence.

## Conclusion

Because the court finds that substantial evidence exists to support the ALJ's decision that Mr. Thompson's back pain does not constitute a disability under the Act, the ALJ was not in error

in denying Mr. Thompson disability benefits.  The court denies
Mr. Thompson's Motion to Reverse the Decision by the Commissioner
and grants the Defendant's Motion for Order Affirming the
Decision of the Commissioner.

SO ORDERED.


_____
Shane Devine, Senior Judge
United States District Court

April 9, 1998

cc:   Raymond J. Kelly, Esq.
      David L. Broderick, Esq.